# King *v.* Livingston Mfg. Co., *et al.*

*Bill for Discovery and Relief.*

(Decided November 28, 1912.   60 South. 143.)

1. *Action; Legal or Equitable; Pleading.*—A bill by a stockholder
for the recovery of money paid for stock, on the ground of ineffi-
ciency and mismanagement of the officers, and for money later
invested in stock on the false representations of the directors that
the company was making money, and the declaration of a dividend,
when the company was in fact losing money, states a cause of action
of purely legal cognizance.

2. *Equity; Amendment; Departure.*—Where a bill which states a
cause of action of purely legal cognizance for the recovery of money
invested in a corporation on account of mismanagement and false
representations, is amended so as to show an effort on complainant's
part to get the corporation to act and alleging its failure, and praying
for an accounting, at the same time attaching interrogatories it

[King v. Livingston Mfg. Co., et al.]

becomes a bill for equitable discovery and relief and the amendment is no departure; the relief prayed being the same and discovery being merely an aid thereof.

3. *Complete Relief.*—Where the bill exhibits some associated equity a court of chancery having jurisdiction to entertain the equity will grant complete relief, although it will not entertain a purely legal claim.

4. *Discovery; Pleading; Equity.*—A bill for equitable discovery is sufficient where it shows that the information sought is material, is indispensable to complainant in the prosecution of the suit, is within the knowledge of the other party, and that proof is not available by any other means.

5. *Same; Parties; Corporation Officers.*—In a suit for deceit against a corporation for the purpose of discovery, it is proper to join the manager, who may know the things sought by the discovery.

6. *Corporations; Actions; Pleading.*—An allegation that a letter containing false statements or representations was "From the company," and signed by its manager, sufficiently shows it to be the act of the corporation.

7. *Same; Principal and Agent; False Representations.*—If the writing of a false statement in a letter by the manager of a corporation was not specifically authorized by the board of directors, nor within the general scope of the manager's authority, the corporation is not liable in an action for deceit, based on the representations so made.

8. *Same; Ratification; Fraudulent Act of Agent.*—The allegation that a corporation ratified a fraudulent representation or transaction of its agent by expending the money obtained, and that a demand for its return was made, but that the company refused to refund, was defective in failing to show that restitution was possible at the time.

9. *Principal and Agent; Representations of Agent.*—Where a principal entrusts an agent with the duty of giving information to those interested therein, it becomes liable to such person for the consequences of false representations or information given by the agent in the course of his employment, notwithstanding the principal intended that only true information should be given.

10. *Fraud; False Statements; Intent.*—Where the action was for deceit, in that plaintiff bought worthless stock after the making of false representations by an agent of the defendant corporation that it was earning ten per cent., when in fact it was losing money, it becomes necessary to allege that such statement was made with the knowledge that new stock would be issued, and intended that the statement should be acted on by complainant; the rule being that essential facts, although inferential, must be alleged.

11. *Same; Lapse of Time.*—A false representation that a corporation was earning ten per cent., made six months before the issuance of additional stock, which the complainant bought, cannot be held to have been withdrawn by the lapse of time, since the operative effect to induce the purchase still remained a question of fact, though weakened.

12. *Same; Inquiry.*—If a false statement is made by one who may be fairly assumed to know that about which he is talking, it may be accepted as true without question and without inquiry, although, the means of correct information were within reach; contributory negligence not being a defense to an action for deceit.

13. *Same; Incredibility.*—The improbability or incredibility of a statement is ordinarily only relevant on a question of its acceptance as true by the other party, and its influence on his conduct, and never of itself precludes a right of action, since the law protects the simple as well as the wise.

APPEAL from Sumter Chancery Court.

Heard before Hon. THOS. H. SMITH.

Bill by R. L. King against the Livingston Manufacturing Company and others. Decree for defendants, and complainant appeals. Affirmed.

The original bill was filed by King, as a stockholder, for himself and for other stockholders, against the corporation and its board of directors, and alleges that the corporation was capitalized at $50,000, and was so capitalized and organized in the year 1903, and that $40,000 was actually paid in before operations were begun; that the parties named were directors of said company, and that orator, having full faith in the integrity and ability of the above-named directors, and relying on their good faith and attention to business, invested a large sum, to wit, $2,000, in the capital stock of the company; that after the plant was organized, T. L. Smith was made general manager, and one J. B. Barnes was employed as superintendent in the making of comforts, and that he only stayed with the plant about one year, and that the operation of the plant was continued under the management of Smith, with one Harkness as his assistant; that Harkness has since left the state, that he is believed to be insolvent, and hence is not made a party; that the directors paid little or no attention to the business, kept no minutes of any directors' meetings, if any were held, and left the entire charge, management, and

control of the company to said Smith, who was inexperienced in that line of work, and to said Harkness, who was a man of known bad business reputation, and was inexperienced in this line of work; but the directors continued to report to the stockholders that the company was making money, when the fact was that it was losing money, and that the debts were growing larger, and that said company was during the time, or a part of the time, indebted to the banking house of McMillan & Co., a firm composed in part of A. C. McMillan and T. M. Tartt, who were members of the board of directors, in an amount larger than the capital stock of the company, and that the directors knew of this, and still permitted the business to continue, and reported to the stockholders that they were making money, and did pay a dividend, when they knew the truth to be they were losing money, and had no property; that on July 27, 1906, the capital stock was increased from $50,000 to $100,000, with $75,000 fully paid in, for the purposes, stated by the directors, of giving a cash capital to work with. Previous to this, however, orator had received a letter from Smith, as general manager, inclosing a check for dividends, and stating that the company had earned 20 per cent. on the paid-in capital, and that, in view of the fact, orator invested $3,000 more in the capital stock at the time it was increased. The bill then alleges various reasons of incapacity and other things against the directors, and concludes with a prayer for a decree or judgment against the corporation and the directors for the total sum paid in by orator, with interest. The amended bill sets up practically the same state of facts, the additional facts showing an effort on his part to get the corporation to act, and its failure, and eliminates as parties defendant the members of the board of directors, but makes the corporation and

T. L. Smith, individually and as manager of the corporation, parties defendant, prays for an accounting, and to that end attaches interrogatories, and asks for a decree against the respondents in the sum of $3,000, with interest. The demurrers raise the propositions discussed.

THOMAS F. SEALE and PATTON & PATTON, for appellant. The bill contained equity as a bill for discovery and was not subject to demurrer as being without equity or that the complainant had a complete and adequate remedy in law.—*Tyler v. Savage,* 143 U. S. 79; *Emerson v. Gaither,* 8 L. R. A. (N. S.) 738; 10 Cyc. 836; *Brinkenhoff v. Bostwick,* 88 N. Y. 52; *Sou. States F. & C. I. Co. v. Whatley,* 55 South. 620. Smith was manager of the corporation and hence was properly joined as a party respondent.—*Meyer v. Thompson,* 104 Ala. 621; *V. & A. M. & M. Co. v. Hale,* 93 Ala. 542; *LeGrand v. McKenzie,* 110 Ala. 492; *Tyler v. Savage, supra;* Sims Chan. Pr., section 113. The bill charges that the representations were untrue when made and it was immaterial whether there was an intent to defraud or whether it was a negligent mistake.—*Lanier v. Hill,* 25 Ala. 558; *Tyler v. Savage, supra.* On these authorities it is insisted that the court improperly sustained demurrers to the bill.

JAMES A. MITCHELL and A. G. & E. D. SMITH, for appellees. There was a misjoinder of parties in that the manager was joined with the corporation. The letter written by the manager cannot be made a basis of recovery unless it is shown to have been made at the time or pending the negotiations and unless it was specially directed by the board of directors.—5 Mayf. Dig. 464. The original bill was without equity and the amendments constitute a departure.—*Rapier v. Gulf C.*

*P. Co.,* 69 Ala. 476; *Adams v. Phillips,* 75 Ala. 461; *Parks v. Lide,* 90 Ala. 246; *Winston v. Mitchell,* 93 Ala. 554. Where fraud is made the basis of relief in an action at law or in equity the facts constituting the fraud must be fully alleged and proven as alleged. Conclusions of fraud are not sufficient.—*Flewellen v. Crane,* 58 Ala. 627; *Reynolds v. Coal Co.,* 100 Ala. 296; *McDonald v. Pearson,* 114 Ala. 630. Complainant as a stockholder had a perfect right to examine into the books and operations of the corporation under section 3477, Code 1907, and was charged with inquiry as to the condition.—*Steele v. Kinkle,* 3 Ala. 353. The defrauded party must assert his claim promptly if he would rescind.—*Allgood v. Bank,* 115 Ala. 418; *Dean v. Oliver,* 131 Ala. 634; *Walling v. Thomas,* 133 Ala. 130; *Jesse French Co. v. Bradley,* 138 Ala. 177 and authorities therein cited.

SOMERVILLE, J.—As we read the original bill, it must be regarded merely as a suit for damages of purely legal cognizance.

By amendment, however, it has become a bill for equitable discovery and relief, and we think the amendment works no departure from the original bill, since the relief sought is the same, and the discovery is merely in aid of that relief.

Where a purely legal claim is presented, equity will not entertain it, except by way of giving complete relief, where the bill exhibits some associated equity. And, with respect to equitable discovery, the bill is sufficient, if it shows that the information sought is material, indispensable to complainant in the prosecution of his suit, within the knowledge of the other party, and the proof not available to complainant by other means.—*Horton v. Moseley,* 17 Ala. 794; *Crothers v. Lee,* 29 Ala.

337; *C. L. Ins. Co. v. Webb,* 54 Ala. 688; *Shackelford v. Bankhead,* 72 Ala. 476; *Lawson v. Warren,* 89 Ala. 584, 8 South. 141.

The amended bill fairly meets these requirements, and does not come within the ruling in *Wolf v. Underwood,* 96 Ala. 329, 11 South. 344, that a stockholder must first resort to his remedy by mandamus to obtain access to the corporation's books, papers, and records, unless he charges that the matters inquired about are not fully and fairly shown thereby; for this bill does charge that no minutes of directors' meetings were kept, and some of the matters are not such as would naturally be found in the corporate records or archives. Of course, if on answer and proof the contrary appears, the equity of the bill would fail. It results from these considerations that there is equity in the amended bill of complaint.

For the purposes of discovery it is proper to join the *officers* of the corporation, who may know the facts sought. Hence there is no misjoinder of parties here, if the bill makes a case of deceit against the corporation and its manager, Smith, jointly. Each of the respondents, by demurrers separately filed to the amended bill, denies the sufficiency of its allegations to show fraud as to either of them, or, if they be sufficient as to Smith, to show that Smith's fraud was participated in by the company.

The fraud complained of is the alleged false statement made to complainant, by a letter written to him in January, 1906, by respondent Smith, that the company had that year earned 20 per cent. on its paid-in capital. We think the allegation in the bill that this letter was *from the company,* and signed by its manager, sufficiently shows it to be the act of the company. If it was not a corporate act, not being specifically authorized by the

board of directors, nor within the general scope of the manager's authority, then no case is made against the company, and it is not liable. It is to be noted, however, that, independently of the particular allegation quoted, the principal, who intrusts to an agent the duty of giving information to those interested therein, is liable to such persons for the consequences of false information given by the agent in the course of his employment, to the same extent as if given directly by the principal, even though the principal intended and directed that only true information should be given.— Cyc. 1583, and cases cited in note 23. This results from the general principles of the law of agency. See *McCord v. W. U. Tel. Co.*, 39 Minn. 181, 39 N. W. 315, 1 L. R. A. 143, 12 Am. St. Rep. 636.

The bill seeks also to make the principal, the company, liable for Smith's fraud on the ground that the proceeds of the fraudulent transaction, the $3,000 paid by complainant for worthless stock, went into the treasury of the company, and was expended by it, and that the company and Smith refused to refund the money to complainant on his demand therefor. If the money was accepted or retained by the company with a knowledge of the fraud in its acquisition, this would, of course, be a ratification of the agent's fraud; for he who knowingly enjoys the benefits of a fraud must also bear its burdens. But the bill does not show that restitution was possible when demand was made on the company, and so does not show an election on its part to ratify the agent's fraud.—31 Cyc. 1270. In this aspect the bill is therefore defective, although no demurrers are addressed to this particular phase of it.

We now come to the consideration of a more difficult question, viz., whether the false representation thus made by Smith, as to the corporate earnings for the

year, six months before the issue of additional stock and complainant's investment therein, can be regarded as the responsible cause of complainant's investment and loss—i. e., as a legal fraud upon him with respect to that transaction—in the absence of any showing by express averment or necessary implication that such false statement was made in contemplation of the future issue of stock, and with the intent that it should be acted upon by complainant in respect thereto. This question is directly raised by the demurrers.

The law seems to be well settled that one essential element of actionable deceit is that the party making the false representation intended it to be acted upon by the party complaining, or else by one of the general or special class to whom he belongs.—*Henry v. Dennis,* 95 Me. 24, 49 Atl. 58, 85 Am. St. Rep. 365, and note, 370; *Colorado Springs Co. v. Wight,* 44 Colo. 179, 96 Pac. 820, 16 Ann. Cas. 644; 2 Pam. Eq. Jur. (2d Ed.) § 876; 20 Cyc. 35. This is, of course, an inferential fact to be gathered from the circumstances of the case. It is evident that, unless a future issue of corporate stock was in the contemplation of the company and in the mind of Smith when the false statement in question was made, there could have been no intention that it should be acted upon by complainant as it was. As a necessary basis for the intention above stated as an essential, it is incumbent upon complainant to allege that some future issue of stock was in contemplation, and, further, that Smith knew of it, and intended it to be acted upon by the complainant.

The facts alleged in the bill may support inferences to that effect, but they are at least equivocal; and, as a matter of pleading, the essential facts, though inferential, must also in such cases be averred.—*Norton v. Randolph,* 176 Ala. 381, 58 South. 283. It follows that

the eighth and ninth grounds of demurrer were well taken, and hence the decree of the chancellor sustaining the demurrers generally was without error, though apparently based upon considerations other than those we have just specified.

If the false representation was in fact made in contemplation of any future issue of stock, and with the intention that it should influence complainant to its purchase, it cannot be said, as matter of law, that the lapse of six months between the statement and the issue and purchase works a withdrawal of the statement, or exhausts its influence as the causa causans of the purchase. The remoteness of its alleged operation, if not wholly unreasonable, may weaken or even destroy the inference of causal connection, but it still remains a question of fact.—20 Cyc. 41, "c," and cases cited in note 66. We note in this connection that the case of *Hooper v. Whitaker,* 130 Ala. 327, 30 South. 355, cited by appellee, is not at all in conflict with this view of the law.

Contributory negligence is not a defense to an action for deceit. If the false statement is made by one who may be fairly assumed to know what he is talking about, it may be accepted as true, without question and without inquiry, although the means of correct information are easily within reach. This has been repeatedly declared. It may be true that "credulity is but the bastard brother of belief," yet in such cases the law protects the simple and foolish, as well as the wise and prudent. It would, indeed, be singular to hold a swindling deceiver exempt from liability because he has swindled only foolishly credulous and trusting persons, and more singular still to hold that such a swindler may successfully plead the incredibility of his falsehood and the folly of

his victim's belief. We are speaking abstractly, of course.

We apprehend that the improbability or incredibility of a statement, judged by ordinary standards of intelligence, is a matter that is ordinarily relevant only to the question of its acceptance as true by the other party, and of its influence upon his conduct, and that those qualities never of themselves forestall a right of action. If the allegations of the bill are true, complainant, a stockholder, unquestionably had a right to rely implicitly upon the statement of Smith, the managing director.—*Tyler v. Savage,* 143 U. S. 79, 12 Sup. Ct. 340, 36 L. Ed. 82. As already pointed out, the bill is one to recover damages for deceit, and not for rescission, as predicated in some of the grounds of demurrer.

Other grounds of demurrer are so plainly without merit as not to justify discussion. Our conclusion is that the eighth and ninth grounds of demurrer were well taken, and that the other objections to the bill were not meritorious. It results that the decree of the chancellor must be affirmed.

Affirmed. All the Justices concur, except MAYFIELD and DE GRAFFENRIED, JJ., not sitting.