# King *v.* Livingston Manufacturing Co., *et al.*

## Bill for an Accounting and Payment of Corporate Assets.

(Decided May 20, 1915.   68 South. 897.)

1. *Corporations; Sale of Stock; Fraud; Remedy.*—The court of equity has concurrent jurisdiction with a court of law to enable a buyer of corporate stock to recover the money paid for such stock where the purchase was induced by fraud, and in such an action it is not necessary to prove fraudulent intent, but innocent acts or misrepresentations are sufficient.

2. *Same; Director; Liability; Fraud.*—While the directors of a corporation are not trustees for the stockholders, there is a relation of trust and confidence between them, and it is the duty of the directors to inform the stockholders of the insolvency of the company before inviting them to subscribe for a new issue of stock, the purpose of which was to raise money with which to pay debts owed by the corporation to its directors, and the failure to give such information was a fraudulent concealment rendering the directors and corporation liable.

3. *Same.*—Where directors of a corporation knowingly accepted the benefit of the fraud of an agent of the corporation in selling stock they are liable for such fraud.

4. *Equity; Pleading; Amendment.*—Where the original bill alleged deceit by the agent of the corporation in the sale of the stock and prayed for a recovery of the money paid therefor, an amendment setting forth a fraudulent scheme whereby the directors to whom the corporation was indebted represented that it was solvent and prosperous and declared dividends, and thereby induced the stockholders to purchase new stock from the proceeds of which the directors paid the debts due themselves, and prayed that the directors be compelled to refund to the corporation the amounts lost to it by their negligent mismanagement of its affairs, and that complainant be paid therefrom the amount paid by him for the stock, although altering the theory of the bill, does not constitute a departure since the purpose is the same and the substance is unchanged.

5. *Contracts; Rescission; Fraud; Return of Consideration.*—Where the consideration received was without value, the rule that a party to a contract cannot rescind for the fraud of the other without offering to return the consideration, is without application.

6. *Same.*—In cases of actual fraud, a court of equity will not generally require a return of the consideration, or require an offer thereof by the complainant before filing his bill for rescission.

7. *Equity; Bill; Multifariousness.*—A bill seeking to have the directors of a corporation pay to it the amounts lost by it because of

[King v. Livingston Manufacturing Co., et al.]

their negligence, and that complainant recover from the amount so refunded, the money paid by him for the purchase of stock of the corporation which he was induced to do by the fraud of the corporation's agent, is not multifarious since the refund by the directors is subsidiary to the real relief sought—that of a recovery by complainant of his money.

8. *Corporations; Directors; Liability; Acquiescence.*—It is not the duty of stockholders of a corporation to investigate the management of the corporation, and they cannot be held to have acquiesced in acts of mismanagement unless they are shown to have had knowledge thereof.

9. *Same; Suits by Stockholders; Appeal to Directors.*—Where the directors, whose acts are complained of, are in control of the corporation, a stockholder need not apply to the directors for relief before filing bill in his own name to enforce their liability to the corporation.

10. *Principal and Agent; Liability for Agent's Act.*—A principal is liable for the acts of his agent done within the general scope of his employment, though without special authority or even contrary to his instructions.

11. *Corporations; Agents; Scope of Authority.*—A letter written by the general manager of the corporation to a stockholder announcing a dividend and falsely reporting large earnings was presumptively within the scope of his authority, and it was not necessary to allege his authority.

12. *Same; Directors; Negligence.*—With respect to particular acts within their authority, and subject to their discretion, directors are not liable to the corporation so long as they act in good faith, and without gross negligence.

13. *Same.*—Where the directors of a corporation wholly neglect the conduct of its affairs and leave it entirely to inexperienced agents, they are grossly negligent, and are liable for losses from breach of trust or negligence of such agent.

APPEAL from Sumter Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by R. L. King against the Livingston Manufacturing Company and others. From a decree sustaining demurrer to the amended bill, complainant appeals. Reversed, rendered and remanded.

PATTON & PATTON, THOMAS F. SEALE, and HENRY UPSOM SIMS, for appellant.

J. A. MITCHELL, and A. J. & E. D. SMITH, for appellee.

[King v. Livingston Manufacturing Co., et al.]

SOMERVILLE, J.—When this case was before us on a former appeal (*King v. Livingston Co. et al.*, 180 Ala. 118, 60 South. 143), we construed the bill as claiming damages for a deceit which was of purely legal cognizance; but the equity of the bill was upheld by reason of the discovery sought. On that appeal we held all the grounds of demurrer bad, except one, which ground pointed out the omission of the bill to charge that the false representation by the company's agent, Smith, as to its financial condition, was made to complainant for the purpose of inducing him to invest in the new issue of corporate stock, as he in fact did about six months later. At that time, by amendment of the original bill, complainant was seeking redress only against the company and its manager and director, Smith. Since then the bill of complaint has been materially amended both as to its allegations and prayers. As now framed, it seeks to compel the directors of the company to pay into the treasury the value of corporate assets which have been lost through their negligent management of its affairs, and asks for a decree for the corporation's repayment to complainant of the $3,000 paid by him for his purchase of corporate stock, with a preference over the claims of the directors against the company. It further prays for a personal decree against the directors for any balance remaining due to complainant after the ratable distribution of corporate assets.

It must be observed that the gravamen of the bill, as it now stands, is not, as formerly, a claim for damages for a deceitful misrepresentation as to the earnings and prosperity of the company, but for a fraudulent concealment of its embarrassments and actual insolvency at the time complainant was invited to subscribe for the 30 additional shares of stock, and when he accepted the in-

vitation and paid the money therefor to the company's treasurer. The theory of the bill is, and it is fairly supported by its allegations, that the directors, knowing the isolvent condition of the company, and being themselves its chief creditors, sent out or authorized to be sent out continued reports of its prosperity, and also authorized dividends to be falsely declared, in order to deceive ignorant stockholders, and then, knowing these stockholders had thereby been given a totally false impression as to the condition of the company, they invited and received from them subscriptions and money for a new issue of stock; the ultimate aim being the liquidation of directors' claims against the company, and not a bona fide rehabilitation of its business.

(1) "A court of equity has concurrent jurisdiction with a court of law in enabling a purchaser of stock to recover back money paid where the purchase was induced by fraud chargeable to the vendor. The remedy in equity  *  *  *  is by a bill to set aside the whole transaction.  *  *  *  It is not necessary for the complainant to prove a fraudulent intent. Innocent acts or misrepresentations suffice for this purpose, although they would be insufficient to sustain an action for deceit."—Cook on Corporations (4th Ed) § 356; 10 Cyc. 848.

(2) The relation of directors to stockholders is not technically that of trustees. Nevertheless, for the purposes here pertinent, it is undoubtedly a relation of trust and confidence (see *Wolfe v. Underwood*, 96 Ala. 329, 331, 11 South. 344), and we think it was the clear duty of these directors, under the conditions shown, to inform stockholders of the losses of the business and the insolvency of the company, as to which they were known to have been misinformed, before or at the time of inviting and receiving further investments of their

money in corporate stock. These were facts which such stockholders had a right to know, and as to which the omission to inform them was a fraudulent concealment, both as to the corporation and as to its agents who shared therein.—*Corry v. Silvay Cia., infra,* 68 South. 891; *Delano v. Case,* 121 Ill. 247, 12 N. E. 676, 2 Am. St. Rep. 81. "There is no obstacle to bringing an action of this kind against the directors and the managers, if both concurred in committing the fraud."—10 Cyc. 849. And, of course, these may be sued jointly with the corporation.—10 Cyc. 324, and cases cited.

(3) A further theory of the bill is that these directors knowingly accepted the benefit of the company's fraud by receiving complainant's money in payment pro tanto of their own claims against the company. Although, as a general rule, a corporate agent who directly commits a wrong for his principal is not the agent of the corporate directors, and the rule of respondeat superior does not apply, yet "where the directors personally and knowingly derive a benefit from the fraud of the subagent, they may be held liable on the ground that he became in a sense their agent."—10 Cyc. 827.

We are of the opinion that the bill exhibits a meritorious complaint against the defendant company, and also against the manager and directors individually, and supports the prayer for repayment by them to complainant of the $3,000 paid by him for worthless corporate stock. The leading case of *Tyler v. Savage,* 143 U. S. 79, 12 Sup. Ct. 340, 36 L. Ed. 82, is strongly analogous, and fully supports the general equity of the bill and the propriety of its prayers.

(4) One objection to the present bill is that the last amendment works a departure. The amendment does, in fact, alter the theory of the bill, but its substance remains unchanged, and its purpose single and identi-

cal, viz., the recovery of the money paid by complainant for worthless stock. We think there is no departure. —*A., T. & I. C. v. Hall & Farley,* 152 Ala. 262, 44 South. 592; Sims' Ch. Pr. § 348.

(5) Another objection is that complainant does not appear to have offered to return the stock purchased by him to the defendants, or either of them, within 'a reasonable time after the discovery of the alleged fraud. A party to a contract cannot himself rescind it for the other's fraud without offering to restore any consideration of intrinsic value received and held by himself. —*Rice v. Gilbreath,* 119 Ala. 424, 24 South. 421; *Hafer v. Cole,* 176 Ala. 242, 57 South. 757. In the present case the certificate of stock is without value, and the rule does not apply.

(6) Moreover, in cases of actual fraud, a court of equity will not in general require such restoration, or offer thereof, by the complainant before the filing of his bill for rescission.—*Garner v. Leverett,* 32 Ala. 410; *Martin v. Martin,* 35 Ala. 560; *Perry v. Boyd,* 126 Ala. 162, 28 South. 711, 85 Am. St. Rep. 17. This objection is without merit, and the bill, in fact, offers to do full equity.

(7) The bill is not multifarious, since, as already noted, its purpose is single. The corporations is insolvent, and its assets are in the hands of a receiver pending its dissolution under the decree of the chancery court in a separate proceeding. The prayer for relief against negligent directors for the benefit primarily of the corporation is subsidiary merely and in aid of the main purpose of the bill, which will be more effectually and speedily accomplished by the collection here of all corporate assets. The method of procedure here followed is within the flexible and adaptable powers of chancery courts, and finds apt precedent in the case of *Tyler*

*v. Savage,* 143 U. S. 79, 97, 98, 12 Sup. Ct. 340, 36 L. Ed. 82. And see, also, *Patterson v. Stewart,* 41 Minn. 84, 42 N. W. 926, 4 L. R. A. 745, 16 Am. St. Rep. 671.

(8) It is not the duty of a stockholder to investigate the management of the corporation, nor to discover and correct the incapacity of its managing officers.—10 Cyc. 834. Hence, unless the stockholder is shown to have had knowledge of such things, he cannot be said to have acquiesced therein by his failure to protest. The bill does not show such knowledge, and hence it is available to defendants only as a matter of affirmative defense.

(9) It appears that an appeal to the company, either through its officers or stockholders, for steps to be taken to enforce the liability of its offending directors as charged, would have been wholly vain and fruitless, since the defenders were themselves in full control of the company, both as directors and majority stockholders. It is well settled that in such a case a preliminary appeal to them is not necessary to enable a stockholder to enforce their liability to the company by a suit in his own name.—*Steiner v. Parsons,* 103 Ala. 215, 13 South. 771; *Wallace v. Lincoln, etc., Bank,* 89 Tenn. 630, 15 S. W. 448, 24 Am. St. Rep. 625.

(10) As pointed out on the former appeal (180 Ala. 118, 125, 60 Sopth. 243), it is enough to fasten liability on the principal if an agent's act is within the general scope or course of his employment, though he act without special authority, or even contrary to his instructions.

(11) The letter of General Manager Smith to complainant, announcing a dividend and falsely reporting large earnings for the current year was presumptively within the scope of his authority, and was clearly within the course of his employment, and a formal allegation

thereof is unnecessary. Moreover, under the amended bill, liability is not predicated, as formerly, on responsibility for this letter, but on concealment of corporate insolvency and business losses; hence a demurrer to the bill on this ground alone is not well taken. On the former appeal one paragraph of the bill set out as a basis of corporate liability in deceit for the fraud of Smith, independently of the rule of respondeat superior, the mere facts that the company received complainant's money and expended it, and refused to refund it. We held, and we think correctly, that these facts alone would not amount to a ratification of the deceit, and that even a refusal to refund the amount to complainant on demand, without any present ability to do so, would not be equivalent to an adoption of the tortious act. The bill, as now amended, does not present that theory of liability, and the grounds of demurrer as formerly indicated are, of course, inapt. The bill shows sufficient diligence in the prosecution of complainant's rights, and is not demurrable for laches or limitations.

The sixth and seventh grounds of demurrer challenge the sufficiency of the allegations of the bill to show such negligence in fact on the part of the directors as would render them liable to the company for losses resulting therefrom. This liability seems to be predicated solely on the following paragraphs: "That these directors paid little or no attention to the operation or condition of the business of the company, but wholly neglected the same; that they kept no minutes of any directors' meetings, if any were held, and left the entire charge and management and control of the company to said T. L. Smith, who was inexperienced in this line of work, and to said W. B. Harkness, who was a man of known bad business reputation, and who was also inexperienced in this line of work. * * * And

your orator would further show that your orator's $2,000 invested by your orator at the organization of the corporation was thus lost to said corporation by the bad management of said Smith and Harkness, and by reason of the neglect of duty of the remaining directors in not keeping up with the affairs of the corporation as aforesaid."

(12) With respect to particular acts within the range of their authority, and subject to their discretion, directors are not liable to the corporation so long as they act in good faith, and without gross negligence which would support an imputation of fraud.—*Goldbold v. Br. Bank,* 11 Ala. 191, 199, 46 Am. Dec. 211; *Smith v. Prattville Mfg Co.,* 29 Ala. 503, 509; *Wolfe v. Underwood,* 96 Ala. 329, 333, 11 South. 344; *Hall v. Henderson,* 126 Ala. 449, 28 South. 543, 61 L. R. A. 621, 85 Am. St. Rep. 53; *Tuscaloosa Mfg. Co. v. Cox,* 68 Ala. 71; 10 Cyc. 829.

(13) But apart from this rule, "the undertaking [of directors] implies a competent knowledge of the duties of the agency assumed by them, as well as a pledge that they will diligently supervise, watch over, and protect the interests of the institution committed to their care. They do not, in our judgment, undertake that they possess such a perfect knowledge of the matters and subjects that may come under their cognizance that they cannot err or be mistaken either in the wisdom or legality of the means employed by them."—*Goldbold v. Br. Bank,* 11 Ala. 191, 199 (46 Am. Dec. 211); *Smith v. Prattville Mfg. Co.,* 29 Ala. 503, 509; *Wolfe v. Underwood,* 96 Ala. 329, 333, 11 South. 344.

Perhaps the most apt and comprehensive discussion of this subject is to be found in the case of *Wallace v. Lincoln Savings Bk.,* 89 Tenn. 630, 652, 15 S. W. 448, 453, 24 Am. St. Rep. 625, 639. We quote from the able

opinion of Lurton, J.: "Directors, by assuming office, agree to give as much of their time and attention to the duties assumed as the proper care of the interests intrusted to them may require. If they are inattentive to these duties, if they neglect * * * meetings of the board, if they turn over the management of the business of the company to the exclusive control of other agents, thus abdicating their control, then they are guilty of gross negligence with respect to their ministerial duties; and if loss results to the corporation by breaches of trust or acts of negligence committed by those left in control, which by due care and attention on their part could have been avoided, they will be responsible to the corporation. The dilegence required from them has been defined as that exercised by prudent men about their own affairs, being that degree of diligence characterized as ordinary. If a less degree of diligence is exercised, the negligence is gross, and for losses consequent he is (they are) liable. 'What constitutes a proper performance of the duties of a director,' says Mr. Morawetz, 'is a question of fact which must be determined in each case in view of all the circumstances; the character of the company, the condition of its business, the usual methods of managing such companies, and all other relevant facts must be taken into consideration.' —Morawetz on Priv. Corp. § 552."

"Directors can be held responsible for a loss resulting from wrongful acts or omissions of other directors or agents only provided the loss was a consequence of their own neglect of duty, either in failing to supervise the company's business with attention, or in neglecting to use proper care in the appointment of such agents."—Id. § 562.

Mr. Freeman, in his comprehensive note to *Marshall v. Farmers', etc., Bank,* 85 Va. 676, 8 S. E. 586, 2 L.

R. A. 534, 17 Am. St. Rep. 84, 101, concludes: "Directors have therefore no right to commit the management of the affairs of a corporation to a cashier, president, or other officer, or to a committee of their own number, and thereafter take no steps to keep themselves informed of what is being done with the corporate assets and the property of depositors and others confided to its care; and, if they do so, and money and other property is lost through speculation, misconduct, or reckless extravagance, which reasonable care and attention on their part would have prevented, they are answerable."

These principles are in accord with the general current of judicial authority (10 Cyc. 830-832), and we think they indicate the sufficiency of the allegations quoted to show the personal liability of the directors in the particulars charged.

We might have held these grounds of demurrer bad for being directed against the bill as a whole; whereas they ought properly to have been directed only to the subsidiary phase of the bill here under consideration. But, since the merits of the question raised would inevitably recur, we have preferred to deal with its merits at this time. It results from the foregoing views that the bill of complaint is not subject to any of the grounds of demurrer assigned, and the demurrer was erroneously sustained.

Let the decree of the chancery court be reversed, and a decree be here entered overruling the demurrer to the bill of complaint as last amended.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.