151 So. 882

## SOUTHERN BUILDING & LOAN ASS'N v. WEAVER.

### 3 Div. 719.

Court of Appeals of Alabama.

March 21, 1933.

Rehearing Granted June 30, 1933.

Further Rehearing Denied Nov. 7, 1933.

Lange, Simpson & Brantley and Reid B. Barnes, all of Birmingham, for appellant.

J. R. Bell, of Hayneville, and Powell & Hamilton, of Greenville, for appellee.

SAMFORD, Judge.

One of the counts of the complaint (count 4) waived the tort and claimed for money had and received. As to this count defendant filed a plea in abatement challenging the venue of the Lowndes county circuit court and averring that defendant was not doing business in Lowndes county at the time of the filing of the complaint, and was not doing business in said county at the time the alleged cause of action arose. Issue was joined on this plea and the evidence showing without conflict that the two transactions, which are the basis of this litigation, were had in Lowndes county by a sale by one of defendant's agents of defendant's corporate stock to plaintiff, the court, at the request of plaintiff, in writing, instructed the jury to find the issue in favor of plaintiff.

Our Statute, Code 1923, § 10471, provides that: "A foreign or domestic corporation may be sued in any county in which it does business by agent, or was doing business by agent at the time the cause of action arose."

█ It is not denied that defendant's agent had the transaction complained of in Fort Deposit, in Lowndes county, but it is insisted by appellant that a sale of appellant's corporate stock is not a corporate function and therefore is not a doing of business within the meaning of the above statute. In this connection we are cited several Alabama authorities, notably Friedlander Bros. v. Deal, 218 Ala. 245, 118 So. 508; Int. C. S. Oil Co. v. Wheelock, 124 Ala. 367, 27 So. 517; Beard v. U. & A. Pub. Co., 71 Ala. 60, as to what is a "doing of business," within the meaning of the statute. These opinions seem to draw a distinction between exercising the powers of the corporation and the carrying on the functions of the corporation, or acts done in the exercise of corporate functions. In the Deal Case, supra, the Supreme Court cites and quotes from many decisions illustrating this distinction, and therefore we may say that it is the law that, if the sale of corporate stock of defendant's corporation is not a doing of business, the venue of the action set up in count 4 is not in Lowndes county.

On this question we seem to have direct authority upholding the trial court in its ruling. It is within the powers granted that defendant should sell its stock that it might obtain funds with which to make loans. So, on both reason and authority, we hold that the sale of stock of a building and loan association whereby the purchaser becomes a member of the association is a doing of business, within the meaning of Code 1923, § 10471. Jones v. Martin, 15 Ala. App. 675, 74 So. 761; Langston v. Phillips, 206 Ala. 174, 89 So. 523.

■ From what has been said above it follows that the trial court did not err in permitting plaintiff to interrogate the secretary of defendant, while he was testifying as a witness, as to sales of other stock sold by defendant to other parties in Lowndes county about the time the stock in this case was sold to plaintiff.

■ Count 4 of the complaint claims of the defendant $500 as for money had and received. In answer to this count, defendant filed plea 7, setting up a sale and delivery to plaintiff of certain surplus certificates issued by defendant in conjunction with the sale of its stock, which said surplus certificates entitled plaintiff to certain interests in defendant's company, as a member thereof. It is further averred that the money claimed in count 4 was received by defendant in accordance with a written application of plaintiff, and that in compliance with the application the surplus certificates were delivered by defendant and accepted by plaintiff.

The defense set up by plea 7 presents an answer to count 4 of the complaint, and was not tested by demurrer. If issue had been joined on this plea, the defendant would have been entitled to recovery on proof of the facts alleged. So, as long as the contract set out in plea 7 was not rescinded, there could be no recovery under count 4. Berman Bros., etc., Co. v. State Savings & L. Co., 222 Ala. 9, 130 So. 554.

■■ In reply to defendant's plea 7, plaintiff set up a fraud on the part of defendant, through its agent, in obtaining the contract pleaded by it. To this replication (b) defendant demurred, pointing out, among other grounds, that there is no averment of a demand for a refund of the money or an offer promptly made to rescind the contract after the discovery of the fraud. The general rule is, when one is induced by fraud to enter into a contract, he has a right to rescind the contract and sue for his money back, in which event he must aver that he acted promptly and gave up or offered to give up possession of the property obtained and restore all benefits he received under it. The action declared on in count 4 cannot be sustained, except upon the basis of a rescission. Day v. Broyles, 222 Ala. 508, 133 So. 269; So. B. & L. Ass'n v. Argo, 224 Ala. 611, 141 So. 545; Bynum v. So. B. & L. Ass'n, 223 Ala. 392, 137 So. 21; So. B. & L. Ass'n v. Waldrop, 24 Ala. App. 362, 135 So. 418.

■ But in the instant case it appears from plea 7 that at the time of the bringing of this suit the surplus certificates numbered A–618 and A–669, issued to plaintiff by defendant, were worthless and of no value. Where this is the case, an offer to return the certificates to defendant was unnecessary. The ground of demurrer raising that point was properly overruled. 2 R. C. L. 778–34; King v. Livingston Manufacturing Company, 192 Ala. 269, 68 So. 897; Lowe & Armstrong v. Shinault, 201 Ala. 593, 79 So. 22.

■ Defendant's pleas A and B, claimed of plaintiff by way of recoupment certain sums of money due under the contract whereby plaintiff became a member of defendant's corporation subject to all the rules and regulations of the company. Plaintiff's replication (b) was a complete answer to these pleas. If the contract set out in pleas A and B was obtained by fraud, the defendant could have no recovery under it, and it would not be necessary in replying to a plea of recoupment claiming under the contract to allege a rescission. Fraud vitiates the contract and precludes a recovery. So. B. & L. Ass'n v. Wales, 24 Ala. App. 542, 138 So. 553.

■ Upon the issue of fraud in the sale of surplus certificates to plaintiff by agents of defendant, the evidence was in conflict. This made a question for the jury. The general charge requested by defendant was properly refused.

When the two excerpts from the court's oral charge, to which exceptions were reserved, are taken and considered in connection with the entire oral charge, there is no error.

■ The refusal to give, at the request of defendant, charge 27, was in line with the foregoing opinion, and was without error.

■ We think that there is sufficient evidence tending to show that the plaintiff did not discover the true meaning of the transaction until within twelve months of the bringing of this suit and hence defendant's charge 24 was properly refused.

It follows from the above that the judgment must be affirmed.

Affirmed.

### On Rehearing.

The rehearing is granted. Former judgment of reversal set aside. Opinion withdrawn, and opinion substituted. Judgment of circuit court is affirmed.

### On Application for Rehearing by Appellant.

■ Appellant urges this court to set out in the opinion defendant's plea 7 and plaintiff's replication thereto. This is not necessary to a review on certiorari, but in compliance with appellant's request it will be done. Plea 7 and replication to plea 7 are as follows:

"7. Plaintiff ought not to recover of the defendant in said count, for that the only money which the defendant ever received from the plaintiff was paid to defendant by plaintiff upon two written subscriptions for certain shares of stock in the defendant association in the manner as follows:

"On to-wit, September 28th, 1928, plaintiff signed and delivered to the defendant one of said written subscriptions, the provisions of which were as follows:

" '1. I hereby subscribe for 20 units of the full participating stock of this Association, and agree to pay therefor the par value of said stock of $100.00 per unit, together with $5.00 per unit (cash), which shall be disbursed by the proper officers as provided by the by-laws. I further agree to pay for the said stock by cash in full or in installments of not less than $0.50 per month on each unit herein subscribed for, at my option.

" '2. I understand that my initial payment of $5.00 per unit is not a part of the withdrawal value of the stock subscribed for.

" '3. This subscription, together with the by-laws constitute a contract between the member and the Association.

" '4. No person has the authority to change or alter the terms of this subscription or bind the Association to any statement not contained in the subscription.

" '(A unit consists of two shares of par value of $50.00 each).

" '5. I desire to become a member of the Southern Building and Loan Association in accordance with the foregoing terms and conditions, and I agree to be bound by the rules and by-laws of said Association. ·

" 'Amount paid in on surplus certificates is not withdrawable except in accordance with the terms set out therein.'

"Defendant avers that on said date defendant accepted said subscription from the plaintiff and received from the plaintiff $5.00 for each unit subscribed for in said written subscription, or a total of $100.00 in cash, in pursuance of the terms of said written subscription, that upon receipt of said written subscription and said payment from the plaintiff, the defendant on to-wit, September 28th, 1928, issued and delivered to the plaintiff a printed certificate (designated therein as a 'Surplus Certificate,' and numbered A-618).

"Defendant avers that on to-wit, November 21st, 1928, the plaintiff signed and delivered to the defendant the other of said written subscriptions, the provisions of which were as follows:

" '1. I hereby subscribe for 80 units of the full participating stock of this Association, and agree to pay therefor the par value of said stock of $100.00 per unit, together with $5.00 per unit (cash), which shall be disbursed by the proper officers as provided by the by-laws. I further agree to pay for the said stock by cash in full or in installments of not less than $0.50 per month on each unit herein subscribed for, at my option.

" '2. I understand that my initial payment of $5.00 per unit is not a part of the withdrawal value of the stock subscribed for.

" '3. This subscription, together with the by-laws constitute a contract between the member and the Association.

" '4. No person has the authority to change or alter the terms of this subscription or bind the Association to any statement not contained in the subscription.

" '(A Unit consists of two shares of par value of $50.00 each).

" '5. I desire to become a member in the Southern Building and Loan Association in accordance with the foregoing terms and conditions, and I agree to be bound by the rules and by-laws of said Association.

" 'Amount paid in on surplus certificate is not withdrawal except in accordance with the terms set out therein.'

"Defendant avers that on said date defendant accepted said subscription from the plaintiff and received from the plaintiff $5.00 for each unit subscribed for in said written subscription, or a total of $400.00 in cash, in pursuance of the terms of said written subscription, and that upon the receipt of said written subscription and said payment from the plaintiff, the defendant, on to-wit, November 21st, 1928, issued and delivered to the plaintiff a printed certificate (designated therein as a 'Surplus Certificate,' and numbered A-669).

"Defendant avers that in said surplus certificate A-618, delivered the plaintiff as aforesaid, it was recited that a unit of stock consisted of two shares of the par value of $50.00 per share, or $100.00 per unit, and it was further recited therein that the legal holder of said unit should have the right to withdraw the amount represented thereby, at such time as said holder's proportionate share in the surplus fund of said Association should equal the amount represented by said certificate, in accordance with the provisions of the by-laws.

"Defendant avers that in said surplus certificate No. A-669, delivered the plaintiff as aforesaid, it was recited that the plaintiff had subscribed for 80 units of the full participating capital stock of the defendant, and had paid into the Association, in accordance with and for the purpose set forth in the by-laws of said Association, the sum of $400.00. The said certificate further represented that a unit of stock consisted of two shares of the par value of $50.00 per share, or $100.00 per unit, and it was further recited therein that the legal holder of said certificate should have the right to withdraw the amount represented thereby, at such time as said holder's proportionate share in the surplus fund of the Association, in accordance with the provisions of the by-laws. Defendant further avers that the by-laws of defendant Association existing at the time of the signing and delivery by the plaintiff of both of said written subscriptions, as aforesaid, provided that an initial payment of $5.00

per unit must be paid in cash into defendant Association by each subscriber to defendant's stock, which said initial payment should not be a part of the withdrawal value of the stock subscribed for but should belong to the Association as a part of its surplus fund. Said by-laws further provided that no dividends would be paid by the defendant on any amount paid by the subscriber into the surplus fund of the defendant, but only on the amount paid on the subscription over and above the surplus fund payment.

"Said by-laws further provided that all amounts paid by a subscriber on his subscription over and above his payment into the surplus fund, were withdrawable by the subscriber on sixty days notice in writing to defendant; but that no part of the initial payment of $5.00 per unit (surplus fund payment) should be withdrawable from defendant Association until such time as the total of the dividends paid to that particular subscriber by defendant should bear as high a ratio to the total amount of all dividends declared by the defendant as the subscriber's surplus fund payment (described hereinabove) bore to the entire surplus fund of the defendant.

"Said by-laws further provided that units of defendant's stock consisted of the par value of $100.00 each, and that all subscriptions to stock, exclusive of the said initial sum of $5.00 per unit cash, should be paid by the subscriber either in full or in installments, at the subscriber's option.

"Defendant avers that the plaintiff paid the defendant other sums on said subscriptions in addition to said surplus fund payments, but that plaintiff after such other payments and before the filing of this suit, withdrew all of said sums so paid other than said surplus fund payments from the defendant's Association, and the defendant on said plaintiff's request for the withdrawal of the said sums paid to plaintiff such other sums along with dividends thereon, all in accordance with said subscriptions.

"Defendant avers that at no time has plaintiff's payments of $100.00 and $400.00, paid by plaintiff into defendant's surplus fund as aforesaid, been withdrawable under the provisions of said by-laws and said written subscriptions, and defendant has in all respects fully complied with the terms of this contract with the plaintiff, evidenced by said written subscriptions, and by said by-laws of defendant Association. * * * "

"Comes the plaintiff, and for answer to defendant's plea No. 7, replies:

"(a) The allegations of said plea are untrue.

"(b) That said alleged subscription bearing date, respectively, Sept. 28 and November 21, 1928, and alleged to have been signed by the plaintiff, and said Surplus Certificates referred to in said plea, and alleged to be for the sum of One Hundred Dollars and Four Hundred Dollars respectively, and purporting to be units of the Capital Stock of the defendant, were obtained and issued through fraud on the part of the defendant's said agent E. H. Logan, in this: that on to-wit, the 28th day of September, 1928, the said E. H. Logan, as the agent of the defendant, then and there acting within the scope of his agency, for the purpose of inducing plaintiff to purchase stock of the defendant, represented to the plaintiff that he as the agent of the defendant was selling to the plaintiff shares of the capital stock of the defendant of the par value of $100.00 and by reason of such representation obtained from the plaintiff the sum of $100.00; that the said representations were false and then known to be false, or ought to have been known by said agent of the defendant, who was then and there acting within the scope of his employment; that the plaintiff relying upon said representations of said E. H. Logan signed said alleged written subscription, without reading the same, with the understanding that the same related to her purchase of the stock of the defendant, as represented by said E. H. Logan, as hereinabove set forth, and that the plaintiff also received said surplus certificate referred to in said plea, under the same representations of said agent as herein above set forth, with the understanding that the same related to her purchase of said stock of the defendant, as represented by said E. H. Logan; that she did not read said certificate of stock but put same away, relying upon said representations of said E. H. Logan, that it was a certificate of stock actually purchased by her, and that she did not discover the true nature of the certificate until to-wit about the Month of April, 1930, after which she brought her suit. For further reply she says that on to-wit: in the month of November, 1928, the said E. H. Logan, as the agent of the defendant, then and there acting within the scope of his agency, for the purpose of inducing plaintiff to purchase stock of the defendant, represented to the plaintiff that he as agent of the defendant was selling to the plaintiff shares of the capital stock of the defendant, of the par value of $800.00, and by reason of such representations obtained from the plaintiff the Eight Shares of the Alabama Power Company Stock referred to in Count 5 of the complaint, of the value of to-wit, $814.63; that the said representations were false, and then known to be false, or ought to have been known by said agent of the defendant, who was then and there acting within the scope of his employment; that this plaintiff relying upon said representations of said E. H. Logan, signed said alleged written subscription, without reading the same, with the understanding that the same related to her pur-

chase of the stock of the defendant, as represented by said E. H. Logan, as herein above set forth, and that this plaintiff also received said surplus certificate referred to in said plea under the same representations of said agent as hereinabove set forth with the understanding that the same related to her purchase of said stock of the defendant, as represented by said E. H. Logan; that she did not read said certificate of stock but put the same away relying upon said representations of said E. H. Logan that it was a certificate of stock actually purchased by her and that she did not discover the true nature of the certificate until to-wit, about the month of April, 1930, after which she brought her suit."

Application for rehearing overruled.