544 So.2d 858 (1989)
C.C. BASS, Jr.
v.
FIRST ALABAMA BANCSHARES, et al.
86-1259.
Supreme Court of Alabama.
January 13, 1989.
Rehearing Denied May 5, 1989.
Frank J. Tipler, Jr. and John M. Pennington of Tipler and Tipler, Andalusia, for appellant.
J. Pelham Ferrell of Ferrell, McKoon & Britton, Phenix City, for appellee The Commercial Bank.
Robert A. Steiner III and James A. Byram, Jr. of Steiner, Crum & Baker, Montgomery, for appellees The Commercial Bank and First Alabama Bancshares, Inc.
Robert A. Huffaker of Rushton, Stakely, Johnston & Garrett, Montgomery, for appellees Harold Albritton, John Cook, George H. Proctor, Dent Williams, John W. Anderson, and Forest K. Hobson.
Charles M. Crook of Balch & Bingham, Montgomery, for appellee T.A. Broughton.
George G. Lynn and Luther M. Dorr, Jr. of Maynard, Cooper, Frierson & Gale, Birmingham, for appellee E.E. Anthony, Jr.
*859 JONES, Justice.
This is an appeal by C.C. Bass, Jr., from an order of the Circuit Court of Covington County dismissing him as a party plaintiff in a shareholder's derivative action. We affirm in part, reverse in part, and remand with directions.
The shareholder's suit was commenced on July 24, 1985, by plaintiff/appellant Bass, a shareholder of Commercial Bank. The complaint named as defendants eight individual members of the 14-member board of directors of Commercial Bank. It asserted that the defendants, by intentional or negligent acts of mismanagement, had made bad or fraudulent loans that had depleted Commercial Bank's assets by approximately $13,000,000, and had led to the sale of Commercial Bank in August 1985.
Subsequent to the commencement of this action, Commercial Bank merged with New Commercial Bank, which is a subsidiary of First Alabama Bancshares ("First Alabama"). The action, as amended, also seeks recovery against First Alabama. The complaint asserted that First Alabama conspired with the board of directors to obtain the assets of Commercial Bank at a grossly inadequate price and thereby accomplish an extinction of the shareholder's derivative action with the merger.
On or about July 5, 1985, the shareholders of Commercial Bank received a letter from the board of directors announcing that no quarterly dividend had been declared at the regular meeting of the board of directors. The letter stated that, because Commercial Bank anticipated "writing off" a substantial amount in unpaid loans, it would experience a loss for the year. Then, around July 16, 1985, Bass (apparently along with the other shareholders) received another letter, this time informing him of a shareholders' special meeting to be held on August 15, 1985. The meeting, according to the letter, was being called for the purpose of approving a resolution that called for a plan of merger of Commercial Bank and First Alabama. This plan had been unanimously adopted and approved by the board of directors. The letter, moreover, contained a form for the shareholders to sign indicating a waiver of notice and consent to the action.
Bass, in his original complaint, filed before the merger, averred that no demand for redress of the alleged grievances had been made upon the board of directors or upon other stockholders prior to commencement of the action. He asserted that such demands would have been useless inasmuch as the alleged wrongdoers comprise a majority of the board of directors. He also maintained that the alleged wrongdoers and their families own a majority of Commercial Bank's stock. The plan of merger was approved by a majority of Commercial Bank's stockholders on August 15, 1985, and a certificate of merger was subsequently issued by the Secretary of State; both of these things occurred after this suit was filed.
All defendants (except one individual director) filed motions to dismiss and motions for summary judgment. The defendants asserted that Bass did not have standing to maintain a shareholder's derivative suit because the procedural requirements of Rule 23.1, A.R.Civ.P. (regarding demand on corporate directors and shareholders) had not been met. It was also asserted that Bass was not a fair and adequate representative because he had ceased to be a shareholder following the merger.
After filing a cross-claim naming as cross-defendants three of the nine directors who were then defendants, Commercial Bank moved the trial court to be realigned as a party plaintiff and moved that it be given exclusive control of the pending action. An order was then entered by the trial court on December 29, 1986, dismissing Bass. The court realigned Commercial Bank as a party plaintiff, and granted summary judgment in favor of First Alabama.
Individual defendant directors who had not been named in the Bank's cross-claim subsequently filed answers and moved to be dismissed from the action. As supporting grounds, they submitted that they had not been named in the cross-claim by the realigned party plaintiff, Commercial Bank.
The trial court made the dismissal, realignment, and summary judgment final *860 pursuant to Rule 54(b), A.R.Civ.P., and Bass appeals.
The preliminary issue presented is whether the trial court erred in dismissing the shareholder's derivative suit for Bass's failure to meet a two-pronged "standing to sue" test: 1) the procedural "notice" requirement of Rule 23.1, A.R.Civ.P.; and 2) the substantive "stockholder status" requirement to maintain a derivative action.
Both prongs of this issue, in the context of a merger, are fully discussed in Shelton v. Thompson, 544 So.2d 845 (Ala. 1989), released this same day, and that discussion need not be repeated here. Accordingly, we hold that the trial court erred in dismissing Bass's derivative action for Bass's "lacking of standing." Because of substantial differences in the two cases, however, that error does not, necessarily and of itself, require a reversal of the judgment in full in this case. To be sure, the judgment as to Bass's individual claim (as opposed to his derivative claim) is affirmed. See our discussion in Shelton.
Therefore, the judgment is reversed as to Bass in his derivative capacity; the judgment is reversed as to First Alabama; and the cause is remanded for reconsideration of all of the issues in light of our holding today in Shelton. In so holding, we are keenly aware that here, as distinguished from the situation in Shelton, the now "non-existent" entity (Old Bank) has been realigned as a party plaintiff; and that, in that capacity, Old Bank has filed claims against certain defendants. We note further, however, that these claims are not in all respects co-extensive with those asserted in Bass's derivative action. Indeed, Old Bank's position on this appeal (and understandably so) is entirely consistent with, and not antagonistic to, that of First Alabama (New Bank's sole stockholder), who remains as a party defendant for purposes of reconsideration upon remand.
Without restricting the scope of the trial court's reconsideration, we suggest the following factors that may be material to a further review of the issues: 1) Bass's right to, and necessity for, further discovery; 2) the likelihood (or unlikelihood) of a compatible relationship between Old Bank and Bass through which they could accomplish a common purpose (particularly if Bass is unable to prove any culpability on the part of First Alabama); 3) the improbability of effecting the maximum recovery by either plaintiff without the pursuit of the remedy by the other; 4) matters of self dealing, self interests, and conflict of interests; 5) the relationship of those individuals who would control Old Bank's role in the litigation with those defendants against whom the claims are being asserted; 6) the impact of the "Assistance Agreement" between the Federal Deposit Insurance Corporation and First Alabama and New Bank; and 7) the trial court's ability, under the totality of the circumstances, to sort out and assign the various claims between Old Bank and Bass in a manner compatible with the goal of achieving maximum recovery from the culpable parties for the ultimate benefit of the defrauded stockholders of Old Bank.
Any party aggrieved by the judgment after remand, within 21 days, may petition this Court for review, without the necessity of a new appeal or the payment of an additional filing fee. Upon receipt of a copy of such petition, the circuit court shall, within 14 days, certify the completed supplemental record to this Court; thereupon, the parties' briefing time shall be governed by Rule 31, A.R.App.P. For monitoring purposes in this Court, upon the entry of any judgment disposing of the issues for reconsideration upon remand, the circuit clerk shall, within 14 days, notify this Court of the entry of such judgment.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
MADDOX, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., and STEAGALL, J., concur in part and dissent in part.
BEATTY and HOUSTON, JJ., recuse.
*861 TORBERT, Chief Justice (concurring in part and dissenting in part).
The plaintiffs' lawsuit was filed prior to the merger. The damages claimed by the plaintiffs in their individual capacity are premised solely upon "depletion in value of their stock." Therefore, I agree with the majority that the individual claims were properly dismissed. See Gregory v. Mitchell, 459 F.Supp. 1162, 1165 (M.D.Ala.1978). No other loss has been alleged. Cf. Shelton v. Thompson, 544 So.2d 845 (Ala.1989) (Torbert, C.J., dissenting) (impairment of shareholders' right to dissent from merger proposal would support individual cause of action). I therefore concur in that portion of the Court's judgment.
As to the derivative claims, however, I must dissent. The majority's position, as in Shelton v. Thompson, supra, seems to be that, "in the context of merger," notice to the directors is always excused because such notice would always be "futile." No other case supports such a departure from what I view as wise and settled law.
My analysis begins with the Alabama Rules of Civil Procedure, specifically Rule 23.1. Insofar as is pertinent here, that Rule provides:
"The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort." (Emphasis added.)
The "notice" precondition to bringing a derivative action is mandatory absent exceptional circumstances. Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). The "demand" requirement recognizes and defers to "the right of the corporate directory to corporate control; in other words, to make the corporation paramount, even when its rights are to be protected or sought through litigation." Delaware & Hudson Co. v. Albany & Susquehanna R. R., 213 U.S. 435, 446, 29 S.Ct. 540, 543, 53 L.Ed. 862 (1909).
The pertinent allegations in the complaint are:
"The plaintiff did not make a demand upon the Board of Directors to institute this action because it is against most of the Board of Directors and such a demand would have been useless.
"The plaintiff did not make a demand upon the other stockholders to institute this action because the majority of the stock is owned by the Directors and/or their families and such a demand would have been useless."
Although it is uncontroverted in the instant case that Bass was a shareholder of Commercial Bank both at the time of the alleged wrongdoing and at the time the derivative suit was commenced, I can not agree that the allegations contained in this complaint substantially comply with the "demand" requirements of Rule 23.1, or with the "futility" exception thereto.
As indicated, a prior demand, first on the directors and then on the shareholders, is required by Rule 23.1, Ala.R.Civ.P.:
"It is a well-established rule of substantive law in this state that before stockholders can sue the corporation to remedy corporate wrongs, they must first apply to the corporation's directors for redress. See, e.g., Minona Portland Cement Co. v. Reese, 167 Ala. 485, 52 So. 523 (1910); Hagood v. Smith et al., 162 Ala. 512, 50 So. 374 (1909); Howze et al. v. Harrison, 165 Ala. 150, 51 So. 614 (1910); Fairhope Single Tax Corporation v. Melville, supra [193 Ala. 289, 69 So. 466 (1915)]. The only exception to this rule is where it clearly appears that such demand would be refused or that the proceedings to obtain redress would be under the control of the parties whose conduct is complained of such that the effort would be useless. See, e.g., Henry v. Ide, 208 Ala. 33, 93 So. 860 (1922); Howze v. Harrison, supra; Alabama Fidelity Mortgage & Bond Co. v. Dubberly, 198 Ala. 545, 73 So. 911 (1917); King v. Livingston Mfg. Co., 192 Ala. 269, 68 So. 897 (1915)."
Rezner v. Fairhope Single Tax Corp., 292 Ala. 456, 460, 296 So.2d 166, 170 (1974) *862 (emphasis added). Over a century ago, the Court stated:
"The opinions of men are as variant as their faces. Hence, in the government of corporations, much must be left to the judgment and discretion of the directory, and much must be credited to the fallibility of human judgment. If it be supposed an unwise course is being pursued, or that the interests of the corporation are suffering, or likely to suffer through the inefficiency or faithlessness of an official, an appeal should first be made to the directory or governing body, to redress the grievance. Failing there, in ordinary cases the next redress will be found in the power of the ballot, which usually comes into exercise at short intervals. We will not say there may not be cases, in which the strong, restraining arm of the Chancery Court may be invoked in the first instance. The whole governing force may become corrupt, or may enter into a combination, either ultra vires, or so destructive of the policy and property of the corporation, as to show an appeal to the directory would be fruitless, and delay extremely perilous. It should be a strong case, however, to justify such interferences." (Emphasis supplied.)
Tuscaloosa Mfg. Co. v. Cox, 68 Ala. 71, 75 (1880). Nor has this Court in more recent times strayed from rigorously enforcing the demand requirement. See Goldman v. Jameson, 290 Ala. 160, 275 So.2d 108 (1973) (demand deemed unnecessary only when futility can be inferred with reasonable certainty); Decatur Mineral & Land Co. v. Palm, 113 Ala. 531, 540, 21 So. 315, 318 (1896) (futility not presumed; demand excused only when it would be a "vain and useless undertaking"); see also Shelton v. Thompson, supra (Torbert, C.J., dissenting). This is also the stand taken in federal courts:
"Despite the strong policy and practical advantages favoring exhaustion of intracorporate remedies, the demand requirement of Rule 23.1 is not without exception. A shareholder may be allowed to assume control of litigation on the corporation's behalf without first affording the directors the opportunity to occupy their normal status by making demand, if the shareholder can show his case is exceptional or, in other words, that demand would be a futile, useless exercise. Thus, the shareholder must demonstrate a degree of antagonism between the directors and the corporate interest such that the directors would be incapable of doing their duty. In Re Kauffman Mutual Fund Actions, 479 F.2d [257] at 263 [(1st Cir.1937)].
"Under Rule 23.1 the plaintiff must allege with factual particularity the reasons why demand is futile and should be excused. The burden is on the plaintiff to show that the requirements of the rule have been satisfied. In Re Kauffman Mutual Fund Actions, 479 F.2d at 263. This Court must then determine, solely on the basis of the complaint, whether the plaintiff has met this burden; whether `any set of facts [is] shown that would prove futility.' Newton v. Hornblower, 224 Kan. [506] at 511, 582 P.2d 1136 [(1978)]. All well-pled facts are assumed to be true. Tabas v. Mullane, 608 F.Supp. [759] at 765 [(D.N.J.1985)]. The decision as to whether plaintiff's allegations of futility are sufficient to excuse demand depends on the particular facts of each case and lies solely within the discretion of the trial court. Lewis v. Graves, 701 F.2d [245] at 248 [(2d Cir. 1983)]; Newton v. Hornblower, 224 Kan. at 511, 582 P.2d 1136. If the complaint does recite sufficient facts to establish futility, courts are generally lenient in excusing demand. Newton v. Hornblower, 224 Kan. at 511, 582 P.2d 1136; see also deHaas v. Empire Petroleum Co., 435 F.2d 1223 (10th Cir.1970). This standard does not mean a court will be lenient in finding there are sufficient facts pled to establish futility. Rather, it means that if the court finds sufficient facts are pled, then it will be lenient in excusing demanda matter within its discretion. As noted in Lewis v. Curtis, 671 F.2d 779, 784 [(3d Cir.1982)], `because of the important policy behind this rule, "the demand requirement of Rule *863 23.1 should be rigorously enforced."' (Quoting Cramer v. GT & E Corp., 582 F.2d 259, 275 (3d Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979).)"
Kaufman v. Kansas Gas & Elec. Co., 634 F.Supp. 1573, 1578 (D.Kan.1986).
Would demand, if made upon the directors of Commercial Bank, have been futile? I conclude that it would not have been. This lawsuit was filed prior to the merger. The corporation that survived the merger has been realigned as a party plaintiff to press the claims against the directors of Commercial Bank. This fact of itself certainly raises a presumption that notice or demand would not have been futile: if the survivor deems it appropriate to prosecute the claims, such a course also, presumably, would have been the prudent course for Commercial Bank to follow. Moreover, in light of precedent, the plaintiff's conclusory allegations regarding futility pale. In Haygood v. Smith, 162 Ala. 512, 50 So. 374 (1909), this Court held that evidence of control by members of a single family of the outstanding shares of stock of a corporation was insufficient to excuse demand on the shareholder. Finally, due to the fact that the standard for reviewing a trial court's finding regarding a question of futility is the abuse-of-discretion standard, Lewis v. Graves, 701 F.2d 245 (2d Cir.1983), I am unwilling to conclude that the trial court's disposition warrants reversal, especially given the broad, unspecific language of the complaint.
In this case and in Shelton v. Thompson, supra, a majority of this Court has demonstrated an odd fascination with derivative suits involving an interplay with merger. As I read this new Court-made law, I believe that notice and demand are now excused as futile as a matter of course when a merger takes place, whether before or after the litigation is initiated. I can not agree with such an active departure from established law. Accordingly, as to the disposition reached regarding the derivative claims, I dissent.
STEAGALL, Justice (concurring in part, dissenting in part).
I would affirm the judgment of the trial court, based upon the reasoning I set out in my separate opinion in Shelton v. Thompson, 544 So.2d 845 (Ala.1989). Therefore, I concur in part and dissent in part.