# Duy *v.* Higdon, *et al.*

### Bill to Rescind Contract.

(Decided June 30, 1909.   50 South. 378.)

1. *Contracts; Rescission; Grounds.*—One who has been fraudulently betrayed into making a contract may resume possession of his property on returning that which he himself has received.

2. *Same; Time.*—When one seeks to rescind a contract he must be reasonably diligent in repudiating it, and must allege precisely the basis of his complaint and prove it fully.

3. *Vendor and Purchaser; Misrepresentation by Vendor; Evidence.* —The evidence in this case stated and examined and held insufficient to show misrepresentation by the vendor or fraud by her agent on her behalf.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

·Bill by G. B. Duy, against Alice S. Higdon and others to cancel certain contracts. Decree for respondents and complainants appeal. Affirmed.

GEORGE W. HUDDLESTON, for appellant. A principal may be bound by knowledge or information given his agent but this must be limited to such knowledge as comes to the agent in the course of transactions for which he was employed and in the scope of his duty and power in the principal's business, and is not to be extended to information or knowledge acquired by the agent which he receives outside of the line of his duty. The principal is bound only if when the agent received the information it was his duty to communicate it to the principal.—*Central of Ga. Ry. Co. v. Joseph,* 125 · Ala. 313; *Reid v. Bank,* 70 Ala. 199; *Frenkel v. Hudson,* 82 Ala. 150. The principal of a special agent is bound by only such of the agent's acts as are in accordance

with his authority, and a third party is bound at his peril to ascertain the extent of the agent's authority.—*Montgomery Furniture Co. v. Hardaway,* 104 Ala. 100. The burden of proof is on one who relies on the validity of the agent's act as binding the principal to show the fact of agency, and that the act was authorized (expressly or impliedly) by the principal.—*Sellers v. Commercial, etc. Co.,* 105 Ala. 282; *George v. Ross,* 128 Ala. 666; *Land etc., Co. v. Preston,* 119 Ala. 290.

W. K. TERRY, for appellee. The bill charged actual fraud, to constitute which there must be falsity in fact, knowledge of the falsity, and intention to deceive.—Pom. Eq. Jur. Sec. 874. As to rescission, see *Grimes v. Sanders,* 4 A. & E. Ann. Cases, 55; *Winston v. Browning,* 61 Ala. 80. Complainant cannot complain of having been misled by appearances for he did not see the farm.— *Rarden v. Badham,* 38 South. 1029. He also made inquiry for himself.—Pom. Eq. Jur. 893. Complainant waived his right to rescind by continuing to treat the property as his own after discovery of the alleged fraud. —*Lockwood v. Fitts,* 7 South. 467. The mere failure of Higdon to fulfil the promise was not grounds for rescission.—*Nelson v. Shelby Mfg. Co.,* 11 South. 696.

DENSON, J.—The purpose of this bill is to rescind two purchases of land on account of alleged fraudulent misrepresentations. The first purchase, made March 31, 1904, was of a one-half interest, and the second, made the 20th of September following, was of the remaining half interest in the same property and of the entire interest in an additional tract. The bill was filed in June, 1905.

"The right to rescind or avoid a contract proceeds upon the ground that a party has been fraudulently be-

.trayed into making it, and, having thus been induced to part with his own property, may resume possession of it on returning that which he himself has received, and thus placing the other party in the same position that he was in before the contract was made." This is the general law of rescission.—*Steele v. Kinkle*, 3 Ala. 352; *Beck v. Simmons*, 7 Ala. 71; *Parks v. Brooks*, 16 Ala. 529; *Jones v. Anderson*, 82 Ala. 302, 2 South. 911; *Snow v. Alley*, 144 Mass. 546, 11 N. E. 764, 59 Am. St. Rep. 119. The principles controlling the action of the court in rescinding contracts, and those in specifically enforcing them, are in many respects the same. The party complaining must be reasonably diligent, prompt in the repudiation of the contract, and must allege precisely the basis of the complaint, and prove it with fulness, so that the court, in giving relief, may not assume the function of making the contract for parties.—Pomeroy's Eq. §§ 889, 897; *Bogan v. Daughdrill*, 51 Ala. 312; *Bell v. Lawrence*, 51 Ala. 160; *Bailey v. Litten*, 52 Ala. 282; *Johnson v. Rogers*, 112 Ala. 576, 20 South. 929; *N. B. & L. Ass'n v. Ballard*, 126 Ala. 160, 27 South. 971.

In this case the complainant resided in Vicksburg, Miss., and the respondent in Birmingham, Ala., and they were associated together in a brokerage business in the latter city; the complainant being represented therein by his son-in-law, Dozier, and the respondent by her husband, Higdon. Respondent was the owner of a fruit and poultry farm of 200 acres, about 25 miles distant from Birmingham, on the railroad, known as "Fruitcliff Farm," and Dozier had visited it a number of times with Higdon, prior to the 31st of March, 1904, when through his instrumentality complainant became the purchaser of a half interest therein, and through Dozier as his agent went into joint possession. The farm was situated in a wild, uncleared country, and comprised five con-

tiguous 40's though the land was not in a compact body. The numbers are E. 1-2 of N. E. 1-4 of section 1, on the west, the N. W. 1-4 of the N. W. 1-4 of the adjoining section, on the east, and an 80, cornering with this 40 in the northeast, thus forming an irregular tract, extending a mile east and west and three-fourths of a mile north and south. The clearing extended northeast and southwest, connectedly, in the three western 40's and there was a separate clearing in the eastern 40's and all together about 45 acres were cleared. This clearing had small corners 3 or 4 acres in all—between the corners of abutting 40's not belonging to respondent; and some of the improvements, including a small dwelling, were located across the line on one of these outside 40's.

Respondent's husband suggested to Dozier to induce his father-in-law, the complainant, to buy a half interest in this farm, and he accordingly visited complainant. at Vicksburg, for that purpose. The bill alleges, in respect to the first purchase, that appellee was in possession of a body of land (without describing it) known as "Fruitcliff Farm," which had on it improvements of great value (specified or enumerated), and that she, through her husband, represented to the complainant that she was the owner of "the said lands" (without otherwise designating them), and of "the improvements situated thereon," and that the purchase was made under the inducement of this representation, which was false, in that a portion of the clearing, and of the land on which some of the valuable improvements were situated, did not belong to her. This transaction, which was consummated on March 31, 1904, by a deed conveying a half interest in respondent's five 40's, by government numbers, was brought about entirely by and through the two agents—Dozier, representing complainant, and Higdon, the respondent.

[Duy v. Higdon, et al.]

The proof on the part of the complainant, respecting these representations, is made entirely by Dozier. He testifies that he was on the place with Higdon several times prior to the purchase, and that on these occasions the latter stated to him that he "was the owner of the farm, .that the title thereto was perfect, that the same comprised 200 acres, that the improvements thereon consisted of a five-room dwelling, several chicken houses, several stables, and a laborer's house, and that about 45 acres of the land was under cultivation, on which there were bout 10,000 fruit trees, and that the land under cultivation was all a part of the farm, together with all the buildings." He further says, "These statements were made to me by E. L. Higdon during two or three conversations had about a month before March 31st," and that they were repeated and dilated on and explained at length. He says that none of the lines were pointed out to him, except in a general way; that he was in the dwelling, and that he was shown all the improvements. And finally he states: "At this time I had no idea of acquiring an interest in the land, nor of suggesting to Mr. Duy that he do so." The witness further testifies that he communicated the representations made by Higdon, at the latter's request, to complainant. It turned out that about 3 acres of the clearing, with some 40 fruit trees, were on corners of adjoining 40's not belonging to respondent, and that some of the improvements—including the two-room dwelling—were across the line, on one of these outside 40's, which was subsequently bought by the defendant for $40.

On the part of the respondent there is an absolute denial that any such representations were made to Dozier. Higdon testifies that, on the contrary, when he showed Dozier the farm, he told him that he owned the improvements, but that there was some doubt about the line's

taking in about 2 acres of the land, including the dwelling. By the terms of the first purchase, the cash payment of $2,500 was, in part or altogether, to be expended in improvements on the farm by Higdon, who remained in management on joint account until September; and it appears that $1,200, at least, of this sum, was so expended, and in part in improvements across the line. As respondent did not own the adjoining lands, it would seem unreasonable to suppose (independently of the testimony) that there was any conscious false statement in reference to the lines, because respondent would not, in such case, have continued to improve lands known to belong to others.

During the occupancy between March and September, Higdon proposed to Dozier to separate the business connection by selling all the farm to complainant and taking over the brokerage business for his wife, or vice versa. This proposition being communicated to complainant, he went to Birmingham, took up the negotiations for himself, and made the second purchase. As to this second purchase, while the bill alleges that the same representations were made, concerning the property, that were made in connection with the first transaction, yet there is no proof of any of the statements charged to have been made by respondent or her husband as an inducement to the trade. The respondent merely offered to sell her remaining interest in the farm, together with 200 acres of other land; and the sale (as in the first instance) was concluded by a deed conveying the land by government numbers only. Each transaction embraced personal property, and the first the release of a debt of some $1,200 against a third party.

We think it would be exceedingly difficult, if not impossible, to restore the status quo of the parties; but, on the whole evidence, we are compelled to agree with

the chancellor that the complainant failed to prove his case. While it is evident that the purchases were made under a misapprehension as to the location of the lines of the land, it is impossible to trace any false representations to the respondent, or fraud to her agent in her behalf. She sold all her land by government numbers, and made no representations as an inducement to the sale.

Let the decree of the chancellor be affirmed.

Affirmed.

SIMPSON, ANDERSON, and MAYFIELD, JJ., concur.