(97 South. 619)

### GRANBERRY v. FORRESTER.
#### (4 Div. 996.)

(Supreme Court of Alabama. June 21, 1923. Rehearing Denied Oct. 11, 1923.)

1. **Vendor and purchaser** ☞123—**Fraudulent representations as ground for rescission of contract must be precisely alleged.**

In an action to rescind a land contract on the ground of fraudulent representations, the fraud and false representations must be precisely alleged, since fraud will not be presumed.

2. **Vendor and purchaser** ☞44—**Proof of fraudulent representations must be clear and convincing.**

In an action to rescind a land contract on the ground of fraudulent representations, the fraudulent representations must be proved by clear and convincing evidence.

3. **Vendor and purchaser** ☞44—**Complainant seeking to rescind contract on ground of fraud has burden of proof.**

In an action to rescind a land contract on the ground of fraudulent representations, the burden of proof is on the complainant.

4. **Vendor and purchaser** ☞44—**Evidence held not to prove that purchaser was induced to enter into contract by misrepresentations of vendor.**

In purchaser's action to rescind contract on the ground of vendor's fraudulent representations that there was no nut grass on the land, in which the vendor claimed that purchaser inspected the land before the contract was executed and that the nut grass was in full view, evidence *held* insufficient to prove that purchaser was induced to enter into the contract by misrepresentations of vendor.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Bill by J. B. Granberry against A. H. Forrester for rescission and cancellation of a contract. From a decree dismissing the bill, complainant appeals. Affirmed.

Farmer, Merrill & Farmer, of Dothan, for appellant.

Deceit can be grounded on evasions and acts, as well as on direct misrepresentations. Providence Oil & Gas Co. v. Allen, 186 Ala. 284, 65 South. 329; Jordan v. Pickett, 78 Ala. 338. Where false representation of a material fact is made, the other party need not make an investigation for himself. Wilks v. Wilks, 176 Ala. 151, 57 South. 776; Tillis v. Smith Sons Lbr. Co., 188 Ala. 122, 65 South. 1015.

F. M. Gaines, of Dothan, for appellee.

If misrepresentation was of a trifling matter, or the purchaser did not trust it, or if it was upon a matter of opinion, there is no reason for a court of equity to interfere on the ground of fraud. Crown v. Carriger, 66 Ala. 590. Where purchaser seeks to rescind on grounds of fraudulent misrepresentation, the right to rescission must be established by clear and convincing proof. Johnson v. Rogers, 112 Ala. 576, 20 South. 929; Harrison v. Deramus, 33 Ala. 463; Bradfield v. Elyton Land Co., 93 Ala. 527, 8 South. 383.

MILLER, J. This is a bill in equity by J. B. Granberry, appellant, against A. H. Forrester, respondent and appellee, to rescind and have declared void a contract for the sale of 80 acres of land made by them, on the ground he was fraudulently betrayed into making it by the vendor, the respondent.

On November 8, 1919, A. H. Forrester sold to J. B. Granberry 80 acres of land for $4,000. The vendee, Granberry, gave the vendor $2,000 cash, and the balance of the purchase price was payable $1,000 January 1,

1920, and $1,000 on November 1, 1921. The vendor, Forrester, gave the complainant, the vendee, bond for title, in writing, in which he agrees and binds himself to convey to complainant the land in fee simple by general warranty deed when the balance of the purchase price is paid.

The complainant filed this bill on January 1, 1920, seeking to rescind the contract of purchase for fraud, to recover back the $2,000 cash with interest paid by him to defendant, and offering to return to the defendant the land and the bond for title. He avers that before purchasing the land he went over, looked at and investigated all of it with the defendant as to its quality and value, except about 15 acres, which was in pasture; and that the fraud and misrepresentation for which he desires to rescind the contract consisted in this:

"Complainant told respondent, 'Let us go and look, and examine the said 15 acres pasture,' or complainant said to respondent such words in substance and in meaning; and respondent then remarked and said to complainant in substance and in full effect, 'There is no use to look at the said 15 acres of pasture land, because it is exactly like the other lands that we have gone over and observed'—that all of the land is just alike and there is no difference in the various parts of said land. The respondent represented to complainant then and there that there was no use in looking at said 15 acres of pasture land, because it was just like the balance of the land; and respondent, in making said representations to complainant about the quality of said 15 acres of pasture land, misrepresented the truth, because said 15 acres of land in the pasture was full of nut grass, practically matted with it, and said nut grass rendered it and makes the said 15 acres of land worthless—nut grass destroying the value of the land where it grows—and on account of said nut grass in and on said 15 acres of land, the said 15 acres is worthless, and besides the said nut grass is a menace to the balance of said tract of land and will spread from time to time over said land until it will completely destroy the whole 80 acres."

The complainant avers that the representations were false, that the balance of the land is free from nut grass, desirable, productive, and in good state of cultivation; that he relied on the representations of the defendant as to the 15 acres, and purchased the 80 acres of land from him; and as soon as he ascertained that the nut grass existed and was growing to that extent on the 15 acres he at once went to respondent, tried to rescind the contract of sale and offered to him the bond for title and demanded his $2,000; and complainant offers in the bill to surrender the bond for title and to rescind the contract of sale. The land was leased or rented before the sale for the year 1920, the defendant reserved the rents for 1920, and complainant was to take possession of the land after the crops of 1920 on the land were gathered.

The answer of the defendant put in issue all the facts alleged, which indicated fraud and misrepresentation by him, and he avers:

That complainant carefully investigated the 80 acres for himself, asking the respondent no questions other than the location of the land; that a very small acreage of the cleared land is in pasture, less than 12 acres; "that it was observed and investigated by complainant just as he did the other lands, and that any nut grass growing thereon was open and patent to the observation of complainant;" that "complainant did go upon the said lands and observe for himself, free from any representations by respondent, and respondent avers that, when complainant had examined and investigated the quality and condition and value of said lands, he told the respondent that he would purchase same at and for the price mentioned, and upon such agreement the complainant paid the respondent the sum of $2,000 and the respondent executed to him his bond for title or contract for sale."

The court, on final hearing on pleading and proof, held:

"That the complainant has not carried the burden requisite to the granting of relief in cases of this character, and that relief should be denied complainant."

The court by decree dismissed the bill of complaint and taxed complainant with the court cost. From this decree the appeal is prosecuted by complainant, and this decree is assigned as error. The decree was rendered February 1, 1922; the appeal from it was taken and approved March 17, 1922; and it was submitted to this court June 5, 1923.

The general law of rescission of contracts of sale of land between vendor and vendee is thus declared by this court in Duy v. Higdon et al., 162 Ala. 528, 50 South. 378.

"The right to rescind or avoid a contract proceeds upon the ground that a party has been fraudulently betrayed into making it, and, having thus been induced to part with his own property, may resume possession of it on returning that which he himself has received, and thus placing the other party in the same position that he was in before the contract was made."

In New Orleans & Ala. C. & M. Co. v. Musgrove, 90 Ala. 428, 7 South. 747, this principle was thus stated and quoted with approval in Johnson v. Rogers, 112 Ala. 578, 20 South. 930:

"No principle is better settled, or more uniformly recognized, than that a court of equity will interfere to rescind a contract of sale of land, into which the purchaser has been induced to enter, by the vendor's false representations of material facts, not patent or open to his inspection, upon which he had a right to rely, and did rely, whereby he was injured, and without the existence of which the contract would not have have been made. But the rescission of a contract is not a matter of discretion; the court must be governed by estab-

lished rules and precedents. Essential elements of a misrepresentation, to be rendered available to rescind a contract, are, that the party to whom it is made must be justified in relying, and must rely, upon the representation, and it must be an immediate cause of his entering into the contract. If he did not rely upon it, or was misled by it, or if it was a fact equally open to the inquiries of both parties, and nothing done to prevent or obstruct or lull inquiry, the court will not interfere to grant relief. Crown v. Carriger, 66 Ala. 590."

The defendant owned 160 acres of land in one body. There were three 40's, running from east to west and one 40 lay south of the extreme western 40. The complainant desired to purchase some land, and the defendant heard of it, and took him out to see his western 80, running south and north. They went over it, but complainant did not like it, and they could not trade on that 80. Negotiations were then entered into for the other 80, involved in this suit. Defendant offered it to him for $50 per acre or $4,000. They walked over nearly all this land; it is practically level and could be seen by them from the center of the place. After walking over some of it, they returned to the car and went up the road in front of the house located on it. The house faced the road, was inclosed by a yard fence, and was surrounded on three sides by a pasture containing from 6 to 12½ acres, according to the different witnesses. Complainant and defendant went into the yard, looked in the house, went around it, and were in a few steps of this pasture fence. This pasture contained nut grass. The complainant testified that they did not go into the pasture; he "did not look at the pasture, didn't go through it because Mr. Forrester told me it was like the other land." The nut grass, from the evidence, was thick in the pasture, and not much, if any, on the balance of the 80 acres.

The defendant testified:

"We [complainant and defendant] went out in the pasture, and he never mentioned going anywhere but what we went. I went everywhere he asked me to go * * * everywhere that he proposed to go"; that "they walked out into the pasture to where some stumps were dug up about 100 to 150 and 175 yards, * * * there was nut grass where he and Mr. Granberry walked." We "walked right over it."

The great weight of the evidence indicates that the nut grass in the pasture was plainly visible, open to view, from the yard of the house where complainant admits he went. The complainant is a farmer, about 50 years of age, has been farming practically all of his life, and has known nut grass for 15 or 20 years. He testified on direct examination positively that he saw no nut grass and did not know it was there before he purchased the land; but his testimony on cross-examination indicated it could be seen from the yard. Many witnesses corroborated the defendant, that complainant and defendant went from the yard into the pasture, over the nut grass to where stumps had been dug up. There is also evidence by a disinterested witness that after viewing the land and before closing the trade the complainant consulted with him about the place and asked his opinion as to the nut grass—whether it hurt the place. Nut grass, under the evidence, decreases from 30 to 50 per cent. the value of the land on which it grows; it injures the soil for agricultural purposes; but it can be used for pasture. It is hard to destroy, and gradually spreads to adjoining lands.

[1-3] These parties were practically strangers, and they stood in no relation of trust or confidence to each other. The fraud and false representations of a material fact which will annul the contract of sale of the land entered into by them, must be precisely stated by allegation in the bill; the fraud and false representations alleged cannot be presumed, but they must be clearly and fully proved. The proof must be clear and convincing. These burdens of allegation and proof rest on the complainant, who seeks to annul the contract. Duy v. Higdon, 162 Ala. 528, 50 South. 378; Johnson v. Rogers, 112 Ala. 576, 20 South. 929; Bell v. Lawrence, 51 Ala. 160.

[4] In this cause the weight of the evidence does not sustain the averments of the bill, but it supports the contention and answer of the defendant. It appears from the testimony that this sale of this 80 acres of land by defendant to complainant is free from fraud and false representations of material facts on the part of the defendant, and that the complainant was not induced into the contract by fraud or false representations as to the quality of the land in the pasture of the defendant. The pasture land with the nut grass on it was open to view of complainant from the yard of the house, where he admits he went when inspecting the property before it was purchased by him. It appears from the weight of the evidence that he went from 100 to 175 yards into the pasture, over the nut grass, viewing and observing this land and its quality for himself.

In Howle v. North B'ham Land Co., 95 Ala. 389, 11 South. 15, this court wrote:

"The right to the rescission or cancellation of a contract because of fraudulent misrepresentations, must be established by clear and convincing proof. A court of equity cannot grant such relief upon a probability, nor even upon a mere preponderance of the evidence. The representations themselves, and that they were falsely and fraudulently made, must be clearly established."

The question before this court in this cause under these principles of law is one of fact. The complainant did not meet and overcome the burden resting upon him by clear and convincing proof; and he therefore is not

entitled to the relief he seeks. A further statement and discussion of the testimony, showing how we reach this conclusion, will be useless and is not required by the statute.

The trial court did not err in refusing complainant relief, in dismissing his bill of complaint, and in taxing him with the cost.

The record is free from error, and the decree is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.