171 So. 247

**BARLEY v. WRIGHT et al.**

6 Div. 884.

Supreme Court of Alabama.

Oct. 15, 1936.

Rehearing Denied Dec. 17, 1936.

Theodore J. Lamar and Fred G. Koenig, both of Birmingham, for appellant.

284

Taylor & Higgins, of Birmingham, for appellees.

GARDNER, Justice.

The bill seeks a rescission of an exchange of real estate consummated between complainant and her copartner A. W. Woodham, on the one hand, and defendants P. D. Wright and A. D. Griffin on the other hand, on November 1, 1932. Complainant and Woodham were purchasing the property in Haleyville, Ala., known as the Cleere Hotel, and the ground for rescission is rested upon certain alleged fraudulent representations by P. D. Wright, the one in active charge, as to the previous earnings of the property so acquired.

A. W. Woodham was made a party defendant, and filed a cross-bill, likewise seeking rescission and cancellation on practically the same grounds stated in the original bill. The answer denied any fraudulent representations, insisted the dealings were in entire good faith, and that the bill was merely an effort to withdraw on what subsequently proved to be an unprofitable business deal.

Upon consideration of the cause for final decree on pleadings and proof, the chancellor denied relief both to complainant and cross-complainant, dismissing their bills. Complainant to the original bill alone appeals, and the ruling on the cross-bill is in no manner here presented by any assignment of error.

The question for consideration is one of fact, and in such cases, since the passage of the Act of 1915, p. 594 (section 10336, Michie's Code), it has not been the policy of this court to enter into a detailed discussion of the evidence. Caples v. Young, 206 Ala. 282, 89 So. 460. We rest content, therefore, with rather general statements and conclusions, after a most careful study of the proof.

As to the burden of proof, it is well settled that fraud is never presumed, and that the right to rescission of a contract because of fraudulent representations must be established by clear and convincing proof. Bain v. Guntersville Realty Co., 211 Ala. 256, 100 So. 128; Howle v. North Birmingham Land Co., 95 Ala. 389, 11 So. 15; Granberry v. Forrester, 210 Ala. 172, 97 So. 619.

And as to the evidence, it appears negotiations began in April, 1932, but at whose instance the proof conflicts. We are rather persuaded, however, that the visit Wright made Woodham at his home in Andalusia was in response to inquiry from Woodham as to the purchase of the hotel property. Woodham and Wright were traveling men of long acquaintance, and the former's health was on the decline. Evidently Woodham desired a line of business that was stationary, and complainant Mary W. Barley, who was a friend of Woodham and his family, and had formerly worked for him, was present at the time of this visit.

There is proof indicating Woodham's mental faculties had been impaired by his ill health, though his cross-bill is not rested upon the question of incapacity to enter into a contract for unsoundness of mind, as we understand it, but the matter of such impairment is stated in connection with alleged fraudulent misrepresentations as indicating a more decided inclination to be misled thereby. But, as previously observed, no question as to the ruling on the cross-bill is here presented. Upon that visit we think it clearly appears Wright was impressed that Woodham's health at that time would not permit his operation of the hotel, and so informed him, and left with the understanding that he would resume negotiations later if his health improved. Negotiations were resumed in June following, at which time Wright suggested that Woodham go to the hotel in Haleyville, and stay some time and see how he got along, and if a trade was desired they would negotiate further. Woodham accepted this suggestion and stayed at the hotel for approximately two months, August and September, 1932. Every opportunity was given him to ob-

serve the hotel, see and get acquainted with the guests.

In June, 1932, complainant herself visited at the hotel during a part of two days and a night and looked over the property. It may be here observed that complainant was an intelligent business woman, with ten years' experience in the operation of hotels. Following these visits and inspections, the parties met in Birmingham and agreed upon the exchange of properties, and, on October 18, 1932, a contract was duly signed, and on November 1, 1932, the trade was consummated by another contract in writing and the deeds subsequently delivered.

On November 1st Woodham moved in and took charge of the hotel, and during December following complainant also moved into the hotel. The written contracts, above outlined, were prepared and executed in the office of the attorney representing complainant and Woodham in the matter and the legality of every step of the transaction safely guarded, including a statement sheet showing the credits, balances due, and proration of taxes and the like. . The business proved unprofitable at least to the extent the purchasers were unable to pay the amount due of principal and interest in January on the mortgage which they were expected to pay, and in February, 1933, they voluntarily surrendered the hotel property to the mortgagee, and during the same month complainant filed this bill.

The fraudulent representations consisted in alleged statements of Wright that the business had been profitable, with gross receipts averaging $1,000 per month for a long period, and that about $500 per month gross had been from permanent guests; that he had taken in $1,400 in the month of September. Wright states that as it was his own business he kept no books, but offers in evidence his bank book showing deposits and his day book disclosing payments made each day out of cash, and that the two combined correctly show his gross receipts. He testifies that his operation of the hotel did result in an average gross receipt of $1,000 per month, and that his permanent guests (naming each with amount paid) averaged $450 or $460. that he never stated his receipts were $1,400 in September, but did say that some months the gross receipts did amount to that much, which was true.

Complainant's testimony as to that particular month of September has its weak-nesses, which we need not here relate. The books offered in evidence by Wright corroborate and substantiate his testimony as to the gross receipts of the business, and the fact that he was able out of the operation of the hotel to meet all payments on the mortgage debt, expend $7,000 in improvements and support his family of four in addition, add confirmation to the statement that it had been for him a profitable business.

When we examine carefully complainant's proof in contradiction, it is at last rested in large part upon her experience in the operation of the hotel, and that the business did not come up to her expectations. But it was a business dependent upon public patronage, uncertain and undefinable, with the matter of management a most important factor.

No charge of fraudulent representations was made until after default in the mortgage payment and the purchaser became aware the loss of the property was imminent. Perhaps, as argued, Wright foresaw a business decline, or feared as much, for the proof discloses that conditions generally were growing worse rather than improving, and was desirous of making disposition of his property. But it is clear complainant and Woodham thought they saw possibilities in the business, believed they could make it pay, and were equally as willing to enter into the trade. But we forego further discussion, and omit many details. Suffice it to say the purchasers traded with every opportunity of inspection, and ample time for reflection, and, in our opinion, the falsity of any representations alleged to have been made by defendant Wright has not been sufficiently established upon which to base a decree for relief.

Lest we be misunderstood, we do not mean to indicate by reference to the matter of inspection, that we accede to defendants' argument the decree should be affirmed by reason of such previous investigations. For the statements made by Wright were presumably within his knowledge, and were not of such a character as to be obvious upon inspection. If the statements were false, and accepted as true to the injury of complainant, a case for relief would be established, notwithstanding complainant might have instituted an independent investigation. Wilks v. Wilks, 176 Ala. 151, 57 So. 776; King v. Livingston Mfg. Co., 180 Ala. 118, 60 So. 143; Henry v. Allen, 93 Ala. 197, 9 So.

579. But the long stay by Woodham at the hotel just preceding the consummation of the trade, with full opportunity of investigation of the properties and observation of the operation of the business, together with complainant's own visit and observation, are all proper to be considered upon the charge of fraudulent representations, and as furnishing some indication of openness and fairness of conduct as opposed to a purpose to defraud and mislead. But further discussion is pretermitted.

We rest our approval of the decree upon the conclusion that the falsity of representations has not been shown by clear and convincing proof. We find no error.

Let the decree stand affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.