**SECURITY LIFE INSURANCE COM-
PANY OF AMERICA, Plaintiff,**

v.

**W. C. JENNINGS, Defendant.**

**Civ. A. No. 1841-N.**

United States District Court
M. D. Alabama, N. D.
Dec. 31, 1963.

Jack Crenshaw, Montgomery, Ala., for plaintiff.

M. R. Nachman, Jr., of Steiner, Crum & Baker, and Walter Knabe, Montgomery, Ala., for defendant.

JOHNSON, District Judge.

This cause was submitted to the Court without a jury on the issues as made up by the pleadings and the proof. Upon consideration of this evidence, consisting of the testimony, both oral and by deposition, of the several witnesses, together with the numerous exhibits thereto, this Court now proceeds to make and enter the appropriate findings of fact and conclusions of law, embodying the same in this memorandum opinion.

On November 11, 1960, Security Life Insurance Company of America, acting through its president and principal stockholder, Frank Leu, purchased from the defendant, W. C. Jennings, a certain piece of property located at 400 Lee Street, Montgomery, Alabama, on which there was a building leased at that time to the General Services Administration of the United States and occupied by the Regional Office of the Veterans Administration. As the purchase papers recited, this lease expired on June 30, 1962, and the United States had an option un-

der the lease to renew same for an additional period of five years. The execution of the purchase papers was the culmination of negotiations between Security Life Insurance Company's president, Frank Leu, and the defendant Jennings which began in early 1960.

As this Court's pretrial order recites, Security Life Insurance Company claims fraud of the defendant Jennings in the sale of this property to Security. The sale of the property, as the documents that were executed between the parties reflect, was for the sum of $900,000.00, $405,412.88 of which was represented by Security's assuming certain mortgages, the balance being represented by a note executed to the defendant Jennings in the sum of $494,587.12, said note being payable in accordance with an agreement between Security and Jennings that was dated November 11, 1960; the note was secured by a subordinate mortgage on the transferred property. The balance due Jennings was to be paid by an arrangement whereby Jennings was to secure single premium life insurance policies with Security as insurer, and the net premiums would be credited against the balance due Jennings.

The plaintiff, Security, says that the defendant's fraud was in the inducement in that W. C. Jennings induced the plaintiff, who was at all times material to this litigation acting through its president, Frank Leu, to purchase this property; that said inducement was in breach of a confidential and fiduciary relationship which existed between Jennings and Leu, who was acting for the plaintiff; that said breach grew out of the suppression and concealment from the plaintiff of the material fact that prior to the sale the defendant Jennings had sought and failed to secure a renewal or extension from the United States Government of the lease on the property which called for a rental of $179,000.00 per annum. Plaintiff Security says that in purchasing the property in question it relied upon this confidential and fiduciary relationship which existed between Jennings and Leu and relied upon the concealment and misrepresentation of this material fact by Jennings.

The second theory upon which the plaintiff bases its case is that the defendant Jennings misrepresented to Security a material fact, which misrepresentation was made wilfully to deceive and which misrepresentation was acted upon by the plaintiff Security, said misrepresentation being "that the defendant had no knowledge of any reason why said lease would not be renewed."

The third theory upon which the plaintiff asks this Court to give it relief is that the defendant Jennings misrepresented a material fact, upon which misrepresentation the plaintiff acted, in that defendant induced "the plaintiff to believe" that the lease would continue beyond June 30, 1962, and would be renewed and extended. The plaintiff asks this Court to:

1. Set aside and cancel the sale of November 11, 1960, and restore the parties to their former positions;

2. Cancel the mortgage from plaintiff to defendant;

3. Restrain defendant from suing on the note or foreclosing the mortgage; and

4. Render a judgment to plaintiff for plaintiff's damages growing out of and as a proximate consequence of the defendant's conduct and/or misconduct, as aforesaid.

Defendant Jennings pleads the general issue. As recited in the pretrial order of this Court made and entered herein on October 12, 1962, this general issue plea includes a specific denial of any misrepresentation, any intent to deceive, any fraudulent inducements, and a further specific denial of any confidential and fiduciary relationship between Jennings and Leu that may have related to the sale of the property involved. In addition to this general plea, the defendant Jennings pleads specially that Security's causes of action are separately and severally barred by the statute of limitations of one year as that statute is set out in Title 7, § 42, Code of Alabama, 1940, as

revised. The defendant Jennings further says that each cause of action relied upon by Security is barred by laches, of which Security has been guilty.

Jennings counterclaims by asking this Court to require Security to specifically perform its obligations as reflected by the note and contract between the parties, both of which were dated November 11, 1960, and further claims of Security for Security's breach of the contract of November 11, 1960, by Security's failing and refusing to issue policies of insurance upon applications from Jennings and failing and refusing to make payments of interest and/or principal on the note in question. Jennings says that he has been damaged as the proximate consequence of Security's breach of contract in the amount of $75,000.00. For his second counterclaim, defendant Jennings claims of Security interest on the note dated August 1, 1960.

To each of these counterclaims separately and severally, Security pleads the general issue and pleads specially a "set-off" in that Jennings collected approximately $45,000.00 in rents on the property in question, which rents plaintiff was entitled to collect, and that the plaintiff is entitled to set off that amount against any interest or damages that may be due Jennings.

The evidence in this case reflects that, at the suggestion of and for the convenience of Security, the purchase was backdated to August 1, 1960. As a result of this backdating, Jennings had collected rent from the Government for the period from August 1 to November 11, 1960, which, according to the agreement between the parties, belonged to Security; out of this rent money that Jennings collected he paid operating expenses, interest to prior mortgagees, and other items which were, according to the contract between the parties, the obligation of Security after August 1, 1960.

Security has never paid any interest to Jennings and has recognized only six of the seven single premium policies written by Jennings. Security has announced that it will not pay interest to Jennings and that it will not recognize or issue additional policies.

The evidence as presented to this Court further reflects that in the spring of 1961 the Government, acting through the General Services Administration, made known publicly that it would seek bids for the construction of a building to be located in Montgomery, Alabama, and to house the Veterans Administration Regional Office. At this same time, the General Services Administration still had under consideration the retention of the 400 Lee Street Building as an alternative plan.

From the spring of 1961 until the summer of 1962, Security, acting through its president, Leu, and acting through Congressman Sikes of Florida, actively sought to work out a satisfactory arrangement with the Government whereby the Veterans Administration would continue to occupy the building in question. When it was unable to do so (and not until it was unable to do so), Security brought this action to abrogate its agreement with the defendant Jennings. The contention by Security in this case that Jennings knew at all times that the Government intended to vacate the building in question at the expiration of its current lease is contrary to the overwhelming evidence in this case. The contention on the part of Security that its president, Frank Leu, relied entirely upon what Jennings told him and made no investigation as to whether the Government would renew the lease in question before Security purchased the building is absolutely contrary to the evidence in this case. As a matter of fact, the evidence reflects that Leu was and is an experienced businessman who owned over ninety per cent of the stock in a $15,000,000.00 insurance company, who organized and helped manage other insurance companies. In the transaction in question, Leu did not abandon this business experience, and he did not fail to exercise his common sense in making a complete and thorough investigation—to the extent that he was satisfied that the lease on behalf of the Veterans Administration by the Govern-

ment would be renewed. For instance, the plaintiff, Security, wrote General Services Administration on April 16, 1962, a letter signed by its vice president, concurred in by its president, and approved before mailing by its general counsel. This letter reflects that Leu, acting for Security, did exactly what any prudent businessman would have done in a transaction of this size. He made his own investigation. That letter, as here pertinent, reflected:

"The Security Life and Accident Insurance Company, through its president, Mr. Frank Leu, before purchasing this building now occupied by the Veterans Administration, made every effort possible through the General Services Administration offices in Atlanta and Washington to determine if there were any plan in the near future whereby the General Services Administration would not need this building. The information that he received was favorable, and he then proceeded to purchase the building."

Other cogent evidence in this case that Security actively and independently investigated the matter as to whether or not there would be a renewal of the lease in question is reflected in the letter of September 21, 1961, written by Security's congressional representative, Congressman Sikes of Florida, who was also on the board of directors of a Florida insurance company with Security's President Leu. Congressman Sikes wrote the Administrator of the General Services Administration, with a copy to the Chairman of the House Committee on Appropriations; in this letter he described the investigative activity which preceded Security's purchase of the building from Jennings as follows:

"The building now used by the VA in Montgomery was acquired only a short time ago by the Security Life and Accident Insurance Company of Mobile. This was done only after the head of the VA in the Montgomery office told representatives of the company that they were satisfied with the building and had no plans to move to other quarters. This, I find, was substantiated when members of my staff made inquiries of the GSA and the VA at approximately the same time, at which time my office was told that there were no plans to change VA quarters in Montgomery and that it was anticipated the lease would continue in effect. *Without these assurances, obviously Security Life and Accident would not have invested in this building."* [Emphasis supplied.]

The evidence not only reflects that the defendant Jennings and the President of Security occupied no confidential or fiduciary relationship but further reflects that defendant Jennings, and others acting for and upon his behalf, revealed fully to Leu, and to Security's officers with whom they were dealing, all of the information they had about the Government's intentions regarding the lease in question. This disclosure was full and complete and extended throughout the period of negotiations. This disclosure included correspondence with the Government and all information which Jennings, and those acting for and on his behalf, had available to him regarding the intentions of the General Services Administration and the Veterans Administration. The disclosure included a letter of March 4, 1960, wherein the Government informed one of Jennings' agents, Erle Cocke, Jr., that as of that date it did not elect to accept a binding five year lease term beginning in April, 1960, but preferred "the terms and tenure of the existing lease" under which it had an option to renew for a full five year period. The evidence in this case further reflects that prior to the purchase of this building Leu had available to him information set out in a letter dated October 12, 1960, written by Cocke, acting for Jennings, to another of the agents acting for and on behalf of the defendant Jennings. The pertinent portion of this letter reads as follows:

"On the item of the lease, General Services has no thought of a lease.

They have so many places that are a real headache to them that Montgomery's VA situation is not one. Also, inasmuch as it is two years off, anything that has transpired to them is 'quite premature.'

"I really think that Frank Leu's inquiry has helped. Christie was of the opinion that we had refinanced the building. I didn't tell him otherwise. * * *"

As reflected in this letter, Leu had made personal inquiry of the General Services Administration regarding its intentions as to the renewal of the lease.

In determining whether or not Jennings knew at the time of the transaction in question the intention of the Government, it is obviously material and relevant to determine from the evidence in this case exactly what the Government's intentions were regarding the renewal of the lease on the building in question. In that connection, the evidence in this case reflects that as of November 11, 1960, the Government had not rejected an extended occupancy of the 400 Lee Street Building beyond the June 30, 1962, expiration date; the Government had not closed the door to continued negotiations on this lease as of March 4, 1960, or as of October, 1960. Thus, the evidence in this case fully convinces this Court that the Government had not made a determination as to the renewal of the lease in question prior to the time Security purchased this building from Jennings. In this connection, it is significant that, twelve days after the purchase date, the Regional Director of the General Services Administration in a letter dated November 23, 1960, requested its central agency in Washington for a program and fund approval for a new federal building in Montgomery, Alabama. This request asked that the program "be phased out in a six to ten year period." Thus, it was impossible, in view of the chronology of events reflecting the Government's intentions, for Jennings or any of those acting for or upon his behalf to know, or even have any basis for believing, on November 11, 1960, that the Government intended to vacate 400 Lee Street.

As stated above, because of the backdating of the contract to August 1, 1960, certain adjustments were necessary since Jennings had collected rents on the property in question from August 1 through November 11, 1960; the evidence in the case insofar as this adjustment is concerned reflects that Jennings owed Security $9,753.50. This figure was entered on Security's journal on November 11, 1960. There is no evidence reflecting that Jennings owed Security $45,000.00 as claimed in plaintiff's setoff. Therefore, the principal balance of $264,-403.96 which Jennings claims is due on the note, since it takes into account this figure of $9,753.50, is still due from Security to Jennings. In addition, the evidence in this case reflects that, in violation of its contractual obligation, Security has never paid any interest to Jennings and, as of May 28, 1962, owed Jennings the sum of $41,730.81 as interest. Further, as stated earlier in this opinion, the evidence reflects that Security has recognized only six of the seven single premium policies which were written and controlled by Jennings pursuant to the agreement.

■ The Alabama statutory law relating to fraud, misrepresentation, and deceit is set out in Title 7, §§ 108, 109, 110, and 111, 1940 Code of Alabama. Rescission of contractual obligations under the authority of these statutes, and under the authority of the common law, may only be upon "clear and convincing proof." Barley v. Wright, 233 Ala. 283, 171 So. 247. See also: Birmingham Broadcasting Company v. Bell, 259 Ala. 656, 68 So.2d 314; Cartwright v. Braly, 218 Ala. 49, 117 So. 477, and Majestic Coal Company v. Anderson, 203 Ala. 233, 82 So. 483.

■ As noted above, there was no confidential relationship existing between Jennings as seller and Leu, acting for the purchaser, Security. Cross v. Maxwell, 263 Ala. 509, 83 So.2d 211, and Fitz-

patrick v. Shine, 254 Ala. 323, 48 So.2d 220. Moreover, because of Leu's business experience and the equal access to Leu and other of Security's agents of all the material information concerning the renewal of the lease on the property in question, there was no reliance, under the laws of Alabama, by Security upon any representation or suppression by Jennings. Birmingham Broadcasting Company v. Bell, supra; Bynum v. Rucker, 235 Ala. 353, 179 So. 241, and Myers v. Moody, 259 Ala. 638, 67 So.2d 891.

Therefore, it is clear to this Court that the plaintiff, Security Life Insurance Company, is not entitled to the relief it seeks in this case, and in addition it is equally clear that defendant Jennings should be and must be, on the evidence in this case, awarded a portion of the relief which he seeks in his counterclaim. This relief will not include the award of any special damages, but will include specific performance and a requirement that Security fully adhere to its contractual obligation.

■ In summary, this Court finds that Jennings was not guilty of any fraud in connection with the sale and transfer of the 400 Lee Street Building to Security; Security bought this property from Jennings only after a thorough and independent investigation by its president, Frank Leu, and other officers and officials acting for and upon behalf of the company; this investigation being into the question of whether the General Services Administration, acting for the Government of the United States, would renew or extend the then existing lease on this building after its expiration date of June 30, 1962. Thus, plaintiff Security is not entitled to rescind the contract for the purchase of this building from defendant Jennings and must be required to specifically perform all of the terms and conditions of this contractual arrangement. In this connection, this Court specifically finds that Security has violated its contractual obligations under this contract of purchase of August 1, 1960. As stated above, these violations consist of Security's not having paid any interest to Jennings and Security's failing to recognize, as it was required to do under the contractual arrangement, the seven single premium policies which were written and controlled by Jennings, and, specifically, Security's failing to recognize policy No. 2007, issued on the life of Erle Cocke, Jr. The evidence reflects that the principal balance due on the note from Security to Jennings dated August 1, 1960, this note having been given pursuant to the purchase of the building, is $264,-403.96. This figure takes into account the sum of $9,753.50 that the evidence reflects is due from Jennings to Security because of the backdating of the contract of purchase from November 11, 1960, to August 1, 1960. The determination that this is the amount due assumes the recognition of all policies, including policy No. 2007, that were issued by Security pursuant to the contract between Security and Jennings. As of August 12, 1963, Security owed defendant Jennings $44,521.99 as interest. In addition, Security owes interest from August 12, 1963. All insurance policies written by Security pursuant to the contract between Security and Jennings are held to be valid. This includes, as stated above, policy No. 2007 on the life of Erle Cocke, Jr. All of the single premium policies issued by Security pursuant to the arrangement with Jennings must be honored according to their terms; all such policies are binding obligations upon the Security Life Insurance Company of America.

Because of the findings and conclusions reached by the Court, it is unnecessary to this cause to rule on Jennings' statute of limitations and laches defenses.

■ This Court declines to order the payment of attorneys' fees in this case to Jennings' attorneys since the litigation grew out of a good faith controversy between the parties, and the relief being granted is not the type of "note collection" relief contemplated by the provision

in the note from Security to Jennings that concerns the payment of attorneys' fees.

An appropriate order will be entered in accordance with the foregoing.