This is an appeal from summary judgment in favor of defendants Charles Bell and Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., in plaintiff's action based upon alleged fraud in the sale of an automobile. We affirm.
It will be helpful to quote from plaintiff's complaint:
 "4. On or about the 6th day of December, 1984, the Plaintiff and Defendant were negotiating concerning the purchase by Plaintiff from Defendant of a 1984 Pontiac, Model T1000, automobile. . . .
 "5. At that time Defendant represented to Plaintiff that the sale price of said automobile would be $6,867.00 plus Alabama sales tax, document charges, title and license. In fact, Defendant charged Plaintiff the sum of $7,455.00 plus Alabama sales tax, document charges, title and license.
 "6. The representations made by the Defendant were false and Defendant knew that they were false.
 "7. Plaintiff believed the representations and in reliance upon them purchased said automobile."
The defendants moved to dismiss, that motion was overruled, and in due course the defendants answered, denying the material allegations of the complaint. The defendants moved for summary judgment, based upon the pleadings, the deposition of plaintiff, and certain exhibits consisting of contract documents. The plaintiffs opposed the motion for summary judgment, based upon the affidavit of plaintiff and the depositions of Joe Curtis Rowe, Bobby Young Bagley, Charles Bell, James Moore, and Clifton Bernard Pace.
In his affidavit, the plaintiff reiterated his charge that Bell "represented to me that the sale price . . . would be $6,867.00 plus Alabama sales tax, document charges, title and license," and added:
 "I was never told by James Moore or Charles Bell that the sales price of the automobile would be more than $6,867.00 plus Alabama sales tax, document charges, title and license.
 "I did not read any of the sales documents on the automobile because I only have a fourth grade education and I am a poor reader. In addition, I have poor *Page 720 
eyesight which cannot be corrected by glasses."
The evidence disclosed by the depositions established that the automobile in question had a "sticker price" (suggested retail price) of $6,867.00. The "retail buyer's order," which contained the base price of the sale and which was signed by the plaintiff, contained the figure $7,455.00. As explained by the president of the dealership, Charles Bell, the difference between these figures, $588.00, was the charge added for a protective package, i.e., undercoat, fabric protector, and paint sealer. Added to this figure of $7,455.00 were sales tax of $145.23, a preparation fee of $100.00, and a title and license fee of $4.50. The aggregate sales price was $7,704.73, and this sum was shown on the retail buyer's order. That order form did not itemize the $588.00 sum charged for the protective package. However, there was testimony that this item was contained in a dealer sticker, an "add-on" sticker, which was placed on the car window. That item was included in the cash price, $7,455.00, and such a service was added to the car upon its delivery to the dealer.
The evidence also showed that plaintiff engaged in trade-in negotiations with defendant's salesman over the allowance for his own car. According to the salesman, plaintiff was given an allowance of $1,000.00 for that car, so plaintiff was not charged the full manufacturer's suggested retail price for the new Pontiac automobile.
The gist of plaintiff's complaint is that defendants fraudulently represented one sales price to him but actually charged him another. Yet, the evidence affirmatively establishes that, after the negotiations had been concluded, plaintiff was presented the sales documents and subscribed his name to them. He conceded that he did not read them, because, he says, he is a poor reader and has poor eyesight, conditions that he did not disclose to the defendants.
 "Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered. Papastefan v. B L Construction Co., 385 So.2d 966
(Ala. 1980); Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 281 So.2d 636 (1973). . . ."
Gonzales v. U-J Chevrolet Co., 451 So.2d 244, 247 (Ala. 1984). That principle is applicable to these facts, as are the principles stated in Torres v. State Farm Fire Casualty Co.,438 So.2d 757, 758-59 (Ala. 1983):
 "Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover. Bedwell Lumber Co. v. T T Corporation, 386 So.2d 413, 415 (Ala. 1980).
 " 'If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, "volunti non fit injuria."'
"Munroe v. Pritchett, 16 Ala. 785, 789 (1849)."
If, indeed, in the final sales price charged to plaintiff there was a difference from what he understood it to be, that difference would have been easily discovered by even a casual reference by him to the sales price clearly indicated on the sales document which he signed. The fact that he did not make such a reference discloses an absence of that ordinary care which, had it been exercised, would have led to the discovery of any such difference, and the failure to exercise which renders his reliance unreasonable. The element of reasonable reliance being absent from the evidence, the *Page 721 
trial court did not err in granting summary judgment.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.