I take this occasion to reevaluate and clarify a part of the law of fraud: the element of reliance, the satisfaction of which is a prerequisite to prevailing in an intentional fraud action. Admittedly, some of this Court's previous cases have made the law in Alabama concerning the element of reliance less than pure, a bit confusing, and slightly apart from the settled jurisprudence of other jurisdictions.
The tort of intentional fraud is unique. It is the lone intentional tort where a defendant is permitted to escape liability based on the plaintiff's "neglect."[1] Outside the *Page 1088 
scope of this tort, it is generally well settled that where a defendant intentionally injures a plaintiff, the conduct of the plaintiff in bringing about the harm (i.e., his own acts or omissions) is not pertinent.
In the context of intentional fraud, then, a defense based on the unjustifiable reliance — i.e., neglect — of the plaintiff is peculiar, if not an anomaly or aberration. This peculiarity is magnified when the question of damages arises. Generally speaking, punitive damages are awardable in all intentional tort cases; intentional fraud cases are no exception. E.g.,Carnival Cruise Lines, Inc. v. Goodin, 535 So.2d 98 (Ala. 1988). As has been recited on countless occasions, punitive damages carry the purpose of punishing the defendant for his misconduct and deterring others from engaging in similar episodes of misconduct. The law punishes one who intentionally injures another and, in so doing, attempts to dissuade others from intentionally causing similar injuries.
But what about the person who intentionally defrauds another? If "no rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool," Chamberlin v.Fuller, 59 Vt. 247, 256, 9 A. 832, 836 (1887), and if the "design of the law is to protect the weak and credulous from the wiles and stratagems of the artful and cunning, as well as those whose vigilance and security enable them to protect themselves," Ingalls v. Miller, 121 Ind. 188, 191, 22 N.E. 995,997 (1889), then why does the law not permit the punishment of intentionally fraudulent scoundrels in every case and encourage the flight of their kind from this State?
As one commentator has written, despite his hyperbole, accurately, "the rule is that one cannot be heard to say he relied upon a statement so patently ridiculous as to be unbelievable on its face, unless he happens to be that special object of the affections of a court of Equity, an idiot."Obiter Dicta, 25 Ford.L.Rev. 395, 397 (1956). To this end, this Court has stated:
 "Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover. Bedwell Lumber Co. v. T T Corporation, 386 So.2d 413, 415 (Ala. 1980).
 " 'If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, "volunti non fit injuria." '
"Munroe v. Pritchett, 16 Ala. 785, 789 (1849)."
Torres v. State Farm Fire Cas. Co., 438 So.2d 757, 758-59
(Ala. 1983). By permitting the downtrodden to sue in tort for intentional fraud after "relying" on patently ridiculous representations advances two undesirable ends. First, large verdicts including punitive damages are simply unwarranted where one has "relied" on a promise that he will be furnished the moon. Second, plaintiffs would be encouraged to ignore the absurdity of "relying" on a promise to bring them the moon, knowing full well that, once the moon did not arrive, a large verdict awaited; Alabama courts should not serve as the means for advancing such "counter-schemes."
Somewhere between the deplorable "con job" and the promise to act in a manner beyond the realm of reality, a line for "reliance" must be drawn. At present, the line seems to be drawn at the "reasonableness" mark. See, e.g., Padgett v.Hughes, 535 So.2d 140 (Ala. 1988); Cahaba Valley Dev. Corp. v.Nuding, 512 So.2d 46 (Ala. *Page 1089 
1987); Hughes v. Cloud, 504 So.2d 734 (Ala. 1987); and BedwellLumber Co. v. T T Corp., 386 So.2d 413 (Ala. 1980). For the proposition that the plaintiff's reliance must have been "reasonable," Bedwell Lumber relied on Mid-State Homes, Inc. v.Holt, 52 Ala. App. 415, 293 So.2d 476 (1974), which, in turn, relied on Nelson v. Shelby Mfg. Improv. Co., 96 Ala. 515,11 So. 695 (1892). Curiously, the Nelson case made no such holding; rather, it merely questioned, in dicta, whether the plaintiff "had a right to rely [on the representation]."Nelson, 96 Ala. at 533, 11 So. at 702. Bedwell Lumber, then, provides the current undergirding of the "reasonable reliance" standard. Similarly, the above-quoted passage from Torres v.State Farm Fire Cas. Co. traces its roots to Bedwell Lumber.
It is Bedwell Lumber, then, that has earned an overdue explanation.
In Bedwell Lumber, T T Corporation, a land developer, offered to purchase certain undeveloped land from Bedwell Lumber Company. Mr. Bedwell misrepresented that the "platted lots [made the basis of the purchase agreement] had been approved for septic tanks," Bedwell Lumber, supra, 386 So.2d at 414. In upholding a jury verdict for T T, this Court refused to hold "that T T Corporation, despite Mr. Bedwell's representation, was obligated, as a matter of law, to instigate an independent investigation which, if pursued, would have disclosed a public record . . . [revealing] that 5 of the purchased lots had been disapproved for septic tanks." Id. at 415. Nevertheless, the Court did recognize that "the representee's reliance must be reasonable under thecircumstances; and, where a party has reason to doubt the truth of the representation or is informed of the truth before he acts, he has no right to act [or rely] thereon." Id. (emphasis added). It is this last quotation that spawned the current "reasonable reliance" standard; it is also this quotation that relied for its precedent on cases that did not truly or adequately support it.
If we accept the proposition that Bedwell Lumber, although correctly decided, incorrectly introduced the "reasonable reliance" standard, the question remains: What is the proper measure of reliance to support an action based on intentional fraud? According to current tort theory, the inquiry focuses not on whether the plaintiff's reliance was reasonable, nor on whether his conduct is free from neglect; rather, the focus is on whether the reliance is justifiable.[2]
The consideration of whether a given plaintiff's reliance is "justifiable" is not the same as the determination of whether it is "reasonable." The former is more subjective, see 2 Harper, James Gray, The Law of Torts § 7.12, pp. 462-63 (2d ed. 1986), the latter more objective. "Justifiability" places less emphasis on the "neglect" of the plaintiff, and more on the intentional misconduct of the tort-feasor.
In the case of intentional fraud, it was settled in Alabama, prior to 1980 and the advent of Bedwell Lumber, and in the vast majority of other jurisdictions, that "one may, without investigation, accept and rely upon a positive statement of fact made to him by one with whom he is dealing, particularly where the person making the statement has special knowledge with reference to the subject-matter." 2 Cooley on Torts § 355, pp. 583-84 (4th ed. 1932). Cooley, in fact, quoted at length and with approval a sample of Alabama jurisprudence relating to the element of reliance in intentional fraud cases:
 " 'Contributory negligence is not a defense to an action for deceit. If the false statement is made by one who may be fairly assumed to know what he is talking about, it may be accepted as true, without question and without inquiry, although the means of correct information are easily within reach. . . . It would, *Page 1090 
indeed, be singular to hold a swindling deceiver exempt from liability because he has swindled only foolishly credulous and trusting persons, and more singular still to hold that such a swindler may successfully plead the incredibility of his falsehood and the folly of his victim's belief.' "
Id. at 585 (quoting King v. Livingston Mfg. Co., 180 Ala. 118,127-28, 60 So. 143, 145-46 (1912)). See also Franklin v.Nunnelley, 242 Ala. 87, 5 So.2d 99 (1941); Barley v. Wright,233 Ala. 283, 171 So. 247 (1936); and Wilks v. Wilks, 176 Ala. 151,57 So. 776 (1912).
The state of the law has so remained to this day, except, apparently, in Alabama. The rule announced by Cooley is, however, subject to the "red flag"[3] exception. A plaintiff has not justifiably relied on a misrepresentation if the statement was one "which any normal person would recognize at once as preposterous," Prosser Keeton on Torts § 108, p. 750 (5th ed. 1984), or "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." Id.;cf. 2 Harper, James Gray, supra, § 7.12, p. 461 ("patently preposterous"); id. at 465 ("patently false or silly").
Lowering the watermark that drowns recovery from reasonable reliance to justifiable reliance also reflects "[t]he recognition of a new standard of business ethics [that] demand[s] [that] statements of fact be at least honestly and carefully made." Prosser Keeton, supra, § 108, p. 750. This is particularly true in the field of consumer transactions, where Congress in recent years has seen fit to enact a rash of consumer protection laws.[4] On the state level, the Alabama legislature has demanded ethical and honest conduct of realtors, Code 1975, § 34-27-36(a); accountants, Code 1975, §34-1-12; architects, Code 1975, § 34-2-34; attorneys, e.g., Code 1975, § 34-3-87; auctioneers, Code 1975, § 34-4-29; dentists, Code 1975, § 34-9-18; engineers, Code 1975, §34-11-11; and the members of virtually every other professional occupation, as well.
Likewise, the courts of this State have sought to ensure that the disparity in bargaining power between buyer and seller in a consumer transaction is not abused by the party with superior knowledge or expertise regarding the subject of the bargain. See, e.g., Ex parte Smith, 412 So.2d 1222, 1225 (Ala. 1982) (policy behind permitting punitive damages "is the protection of the public from oppressive practices, particularly in the sale of consumer goods"); see also East River S.S. Corp.Transamerica Delaval, 476 U.S. 858, 106 S.Ct. 2295,90 L.Ed.2d 865 (1986); Lloyd v. Service Corp. of Alabama, Inc.,453 So.2d 735 (Ala. 1984) (recognizing public policy of protecting consumers victimized by disparate bargaining power). Additionally, in Alabama we recognize that, in every transaction, the parties impliedly warrant that they are acting in good faith and are engaging in fair dealing. Barnes v.Atlantic Pac. Life Ins. Co., 295 Ala. 149, 325 So.2d 143
(1975).
Bedwell Lumber, with its "reasonable reliance" standard, was not incorrectly decided. That case, however, dealt with a dispute among the parties to a commercial transaction, thus parties with presumably equal bargaining power (or, at least, less disparate bargaining power than is presumed in a consumer transaction); in that case, the objective standard of "reasonable reliance" was correctly employed. That standard, however, should not have subsequently trod into the arena of consumer transactions.
One other short line of cases has also clouded the proper standard of adjudging reliance in consumer transactions. InTraylor v. Bell, 518 So.2d 719 (Ala. 1987), this Court quoted the following passage *Page 1091 
from Gonzales v. U-J Chevrolet Co., 451 So.2d 244, 247 (Ala. 1984):
 " 'Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered. Papastefan v. B L Construction Co., 385 So.2d 966
(Ala. 1980); Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 281 So.2d 636 (1973).' "
Traylor, 518 So.2d at 720; see also Tribble v. Provident Life Acc. Ins. Co., 534 So.2d 1096 (Ala. 1988); Jarrard v.Nationwide Mut. Ins. Co., 495 So.2d 584 (Ala. 1986). This "gloss" does not accurately support the "reasonable reliance" standard. All three cases relied upon by the Court in Traylor— Gonzales v. U-J Chevrolet Co., Papastefan v. B LConstruction Co. and Johnson v. Shenandoah Life Ins. Co. — involve statute of limitations issues. The focus in those cases was on the plaintiff's prudence in discovering his damage, not on whether his reliance on any representations was warranted.
The cases cited in Traylor correctly reflect that statutes of limitations, even when based on the "discovery rule" in the fraud context, should be measured by objective standards.Traylor itself, however, is an intentional fraud case involving a consumer transaction and no statute of limitations issue; the focus there was on the plaintiff's reliance, and thus on a question wholly different from when the plaintiff should have discovered the fraud. Obviously, the plaintiff in Traylor
discovered that he had been damaged as the result of the defendant's misrepresentation, i.e., the plaintiff discovered the fraud; the sole question left undetermined was whether his reliance was warranted. That determination, as we recognize today, should have been made according to subjective standards by asking whether the reliance was justifiable, not according to objective standards measuring the reasonableness of the plaintiff's reliance, and certainly not by resort to an inappropriate analogy to a statute of limitations concern.
Munroe v. Pritchett, 16 Ala. 785 (1849), is vital and is consistent with my analysis. In that case, the Court wrote:
 "If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, 'volunti non fit injuria.' "
Id. at 789. That Court also recognized strong public policy that dictates punishing those who profit by their resort to trickery and deceit:
 " 'He who affirms either what he does not know to be true, or knows to be false, to another's prejudice and his own gain, is, both in morality and law, guilty of falsehood, and must answer in damages.' The concluding remark in the foregoing extract . . . we think is a very just and correct exposition of the rule of law."
Id. (quoting Adamson v. Jarvis, 4 Bing. 66, 73, 130 Eng.Rep. 693, 696 (C.P. 1827)) (emphasis in Munroe).
In an intentional fraud case involving a consumer transaction there are two competing concerns: ensuring that the consumer take some measure of self-protection, and dissuading sellers from engaging in deceitful conduct and punishing them if they do. Taken literally, the emphasized quotation above fromMunroe v. Pritchett, supra, could be interpreted to impose strict liability for intentional fraud. This result ignores the first concern: requiring the consumer to protect his own interests, at least minimally. On the other hand, a "reasonable reliance" standard that compares a given plaintiff's conduct to what the elusive "reasonable man" would have done under identical circumstances too often precludes punishing those who gain by their lies and deterring others who might be tempted to act similarly. The resolution, then, should be a compromise between these points.
"Reliance" should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully understand *Page 1092 
the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." Prosser Keeton, supra, § 108, at 750. This rule recognizes the vitality of the bar to recovery forged in Munroev. Pritchett — where "the purchaser blindly trusts" — and balances it with the policy of punishing liars and deterring deceitful practices.
The people of Alabama should be able to presume that their neighbors are honest people; suspecting deceit is a duty that should not be borne, and a characteristic that should not be coveted. "The law protects even careless dupes from fraud. And this is true even though the investigation 'could be made without any considerable trouble or expense.' " Harper, James Gray, supra, § 7.12, at 456-58 (quoting Restatement (Second)of Torts § 540 comment a (1977)). Unless one's reliance isunjustifiable, based on a representation patently ridiculous on its face, the intentional fraud action should succeed, the defrauder should be punished, and other potential deceivers should be shown the light of the law.
In my opinion, the representation made to Proctor in this case was not patently ridiculous on its face. Moreover, the record discloses ample evidence from which a jury could conclude that the representation was made with the intent to deceive Proctor. Therefore, I agree that the judgment in favor of the plaintiff is to be affirmed.
JONES and SHORES, JJ., concur.
[1] The term "neglect" is concededly used inartfully but serves well from the standpoint of convenience. Prosser and Keeton instruct: "Rather than contributory negligence, the matter seems to turn upon an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case, and so comes closer to the rules which are associated with assumption of risk." Prosser Keeton on Torts § 108, p. 751 (5th ed. 1984); see also 2 Harper, James Gray, The Law of Torts § 7.12, p. 461-62 (2d ed. 1986).
[2] Holman v. Joe Steele Realty, Inc., 485 So.2d 1142 (Ala. 1986), exemplifies the confusion surrounding the element of reliance.Compare id. at 1144 ("There is no showing in the record of the plaintiffs justifiable reliance upon the alleged fraudulent representations of Clokey") (emphasis added) with id. at 1145 ("The actual or imputed knowledge of the Holmans . . . precludes any finding of a reasonable reliance upon the alleged representation of Clokey") (emphasis added).
[3] "Red flag," in the intentional fraud scenario, is a phrase most recently appearing in Padgett v. Hughes, 535 So.2d 140
(Ala. 1988).
[4] Among the more prominent of such laws are the Securities Act of 1933 (currently 15 U.S.C. § 77a-77aa); the Securities Exchange Act of 1934 (currently 15 U.S.C. § 78a-78kk); the Magnuson-Moss Warranty Act (15 U.S.C. § 2301-2312); the Truth-in-Lending Act (15 U.S.C. § 1601-1677); and the Interstate Land Sales Full Disclosure Act (15 U.S.C. § 1701-1720) .